Argued December 12; reversed December 31, 1934; rehearing denied
February 5, 1935

## STATE *v.* JUTSTROM FISH CO., INC., ET AL.
### (39 P. (2d) 355)

*Plowden Stott* and *Edward J. Clark,* both of Portland, for appellants.

*Wm. C. Ralston,* Deputy District Attorney of Portland (Lotus L. Langley, District Attorney, of Portland, on the brief), for the State.

BELT, J. This is an action on a statutory bond executed by the defendant Jutstrom Fish Co., Inc., as principal, and the defendant American Surety Company of New York, as surety, to guarantee to the state payment of a poundage tax on fish as required by law. Under section 40-518, Oregon Code 1930, each wholesale dealer in fish, in addition to the license fee of $2 as provided in section 40-515, Oregon Code 1930, is required to pay a poundage fee of one-half cent per pound "on each and every species of salmon and sturgeon received or purchased", based upon the gross weight thereof. It is further provided that the poundage fee on dog salmon caught or taken in the waters of the state of Oregon between September 10 and Novem-

ber 30 of each year is one-eighth cent per pound and that a poundage fee of one-eighth cent per pound shall be paid on every pound of shad purchased or received by any packer, buyer, or wholesaler.

The bond was conditioned that if the Jutstrom Fish Co. "shall on the first of each month after date hereof report to the Master Fish Warden of the State of Oregon, or his successor, the number of pounds of salmon, shad and sturgeon in the whole or round, handled by said Jutstrom Fish Co., other than canning thereof, in District No. —, at Marshfield, Oregon, during the month preceding said report, and for each month thereafter during the period of said license, and remit the additional license or poundage fee for the period covered by said report as required by law, then this obligation shall be void; otherwise to remain in full force and effect".

After alleging the business in which the defendant fish company was engaged and the execution of the bond for the purpose of obtaining a license, it appears from the complaint that the fish company during 1929 and 1930 handled 423,967 pounds of fish, but the kind or quality of such fish is not disclosed.

It is further alleged in the complaint that the defendant fish company has failed and refused to pay the poundage tax on fish purchased or received amounting to a balance of $1,345.08, although demand therefor has been made upon it and the surety on the bond. Judgment for the sum of $1,000, together with interest thereon at the rate of 6 per cent per annum from August 23, 1932, was demanded.

Defendants joined in an answer denying, among other things, that the company had handled fish as charged in the complaint, except as specifically ad-

mitted in their affirmative answer and defense. In this further and separate answer it is alleged:

"I.

Defendant Jutstrom Fish Co., Inc., is a corporation duly organized and existing under and by virtue of the laws of the State of Oregon; that the defendant American Surety Company of New York is a corporation organized and existing under and by virtue of the laws of the State of New York and is duly licensed and qualified to transact a general surety business in the State of Oregon.

"II.

For some years prior to and at all the times mentioned in said complaint, defendant Jutstrom Fish Company was engaged, among other things in buying fish caught beyond the three-mile limit on the high seas in the Pacific Ocean and selling them in interstate commerce in the manner hereinafter alleged. Attached hereto, marked 'Exhibit A' and made a part of this answer is a statement as prepared by the State of Oregon, plaintiff herein, through its Fish Commission, giving the details of its demand in its complaint as to kind of fish and amount of tax. Said statement further shows detailed credits totalling $662.22 in deduction of its demand of $2,007.30.

"III.

All of the troll chinooks, or 72,692 pounds, shown upon said statement and 90 per cent, or 155,767 pounds of the troll silversides shown upon said statement were caught, purchased and sold by said defendant, Jutstrom Fish Company in the following manner:

The fish were caught mainly by citizens of the State of Washington, operating boats which had their home places of license at points in the State of Washington. The operators of said boats made all their catches and operated upon the high seas much more than three miles off shore in the Pacific Ocean, mainly opposite and out westerly from Cape Blanco to Eureka, California, and quite generally off the coast from Crescent City, California. The fish, when caught, were gutted,

gilled, cleaned, washed and iced at sea at approximately the position where caught and soon after being caught. The owners of said boats and catches then came into port and offered said fish for sale to defendant, Jutstrom Fish Company and sold said fish to said defendant Jutstrom Fish Company in the identical condition in which they had been placed upon the high seas more than three miles off shore as hereinbefore alleged and not otherwise. Said fish were bought for immediate reshipment in interstate commerce. The pretended poundage tax was placed upon the fish in the condition in which they so came to defendant Jutstrom Fish Company from the high seas without claim or pretence that said pretended tax was an inspection and/or regulatory tax, or anything other than a tax for revenue purposes solely, and there was in fact no inspection and/or regulation made in said connection. Immediately upon purchase as aforesaid all of said fish were beheaded, re-iced and then were immediately shipped in interstate commerce to points outside the state of Oregon, principally to California, Illinois and New York. Those fish shipped to New York representing about ten per cent of the whole, had been contracted for by a buyer in New York before the fish were purchased by defendant Jutstrom Fish Company as aforesaid, and after purchase, said portion of said fish received the further treatment of being split and mild cured in salt and placed in tierces by defendant, Jutstrom Fish Company.

"IV.

Sections 40-514 and 40-515 Oregon Code 1930, so far as they may relate to the attempt to require an additional bond for the payment of poundage tax, and Sections 40-518 and 40-519 Oregon Code 1930, are unconstitutional and void, for each of the reasons, among others, following:

(a) Said statutes seek to impose an impost and/or duty upon imports and exports in violation of Article I Section 10 of the Constitution of the United States.

(b) Said statutes seek to tax fish in the original condition in which they are brought from the high seas

from points well beyond the three-mile limit off shore and seeks to tax the passage of said fish through the State of Oregon in said condition in interstate and foreign commerce in violation of Article I Section 8 of the Constitution of the United States.

(c) Said statutes seek unreasonably to hamper and prevent aliens, non-residents of the State of Oregon and others from dealing in or buying or selling or handling of said fish in violation of said sections of said articles of the Constitution of the United States as aforesaid, and of the Fourteenth Amendment to said Constitution of the United States.''

A general demurrer to the above further and separate answer was sustained and, upon refusal of the defendants further to plead, the court entered judgment against both defendants for the amount specified in the bond, together with interest thereon as demanded in the complaint. Defendants appeal.

■ The defendants are not in a position to assert that the statute imposing a poundage tax on fish purchased or received, regardless of where they were caught or taken, is unconstitutional. The statute was known to them when the bond was executed. In other words, the state was induced to issue a license to the Jutstrom Fish Co. by reason of the bond guaranteeing payment of the poundage tax, and both principal and surety are estopped to assert its invalidity. As stated in *United States v. Hodson,* 10 Wall. 395 (19 L. Ed. 937), and cited with approval in *Daniels v. Tearney,* 102 U. S. 415 (26 L. Ed. 187):

''When a bond is voluntarily entered into and the principal enjoys the benefits it was intended to secure, and a breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such a defense.''

Also see *Portland v. Bituminous Paving Co.,* 33 Or. 307 (52 P. 28, 72 Am. St. Rep. 713, 44 L. R. A. 527).

■ The statute in question, however, does not on its face purport to impose a duty or impost upon imports. Neither does it purport to burden or tax goods in interstate commerce. Hence, the defendants are not precluded from presenting such questions. When the bond was executed it was not contemplated by the parties that the state would impose a tax on imports or burden interstate commerce. The statute does not undertake to regulate or control the taking of fish beyond the three-mile line. So far as the imposition of the poundage tax is concerned, it is immaterial where the fish are caught or taken. If the statute were otherwise constructed, it would be practically nullified as commercial trollers would with impunity assert that all fish caught were taken on the high seas. A proper construction of the statute makes it obligatory to pay the poundage tax on fish purchased or received, and the mere fact that they were caught or taken in waters over which the state has no jurisdiction does not alter the obligation. Of course, there would be no liability on the bond for refusal to pay a poundage tax on fish of true import character or on those shipped in interstate commerce.

■ Let us assume, as we must do, that the allegations of the affirmative answer are true, viz: That the chinook and silverside salmon were caught and taken more than three miles off shore in the Pacific ocean. Are such fish imports? There is a dearth of authority on the subject, but we think the word "import" as used in the Constitution means a shipment of goods or merchandise from a foreign country. *American Steel & Wire Co. v. Speed,* 192 U. S. 500 (24 S. Ct. 365, 48 L. Ed. 538), is authority for the proposition that goods shipped from one state into another are not imports. The question at bar was not decided in

*Gulf Fisheries Co. v. MacInerney,* 276 U. S. 124 (48 S. Ct. 227, 72 L. Ed. 495), a case involving a similar fact situation. Justice Brandeis, speaking for the court, upheld the poundage tax for the reason that, assuming that such fish were imports, they were so handled and treated after being brought to port and before imposition of the tax as to lose their character as such. They had been so acted upon as to become a part of the common property of the state. The United States Supreme Court, in *Sonneborn Bros. v. Cureton,* 262 U. S. 506 (43 S. Ct. 643, 67 L. Ed. 1095), thus commented upon *Woodruff v. Parham,* 8 Wall, 123 (19 L. Ed. 382):

''The question most considered by the court was whether merchandise exported from one state to another was an export which a state was forbidden to tax by article 1, § 10, par. 3, of the federal Constitution, * * *. It was held that it was not, and that the words 'imports and exports' as there used referred to, and included only merchandise brought in from, or transported to, foreign countries.''

In the Woodruff case, it was said:

''If we turn for a moment from the consideration of the language of the Constitution to the history of its formation and adoption, we shall find additional reason to conclude that the words imports and imposts were used with exclusive reference to articles imported from foreign countries.''

Assuming, but not deciding, that the chinook and silverside salmon caught beyond the three-mile line were imports, we think it affirmatively appears from the answer of the defendants that they lost their character as such when they were brought to port, sold to the Jutstrom Fish Co., and thereupon entered the channels of trade. In the answer it is alleged that ''immediately upon purchase as aforesaid all of said fish were beheaded, re-iced and then were immediately

shipped in interstate commerce to points outside the state of Oregon * * *''. The tax was not imposed before sale and therefore it cannot be said that the importer was obliged to pay the same. When goods or merchandise are imported, their immunity from state taxation lasts, as said in *Sonneborn Bros. v. Cureton,* supra, ''until the article imported has been sold, or has been taken from its original packages of importation and added to the mass of merchandise of the state''. The instant case is distinguishable from *Gulf Fisheries Co. v. MacInerney,* supra, in that, in the latter case, the vessels from which the fish were caught in the Gulf of Mexico and upon which they were brought into Texas were owned and operated by the defendant fish dealer, as it appears from the statement of facts in the report of the case in 17 F. (2d) 374. No sale was made to the wholesale fish dealer therein. Here in addition to the element of sale, which we think decisive relative to the question of the fish being imports, we also note the allegation of the defendants that ''immediately upon purchase as aforesaid all of said fish were beheaded, re-iced and then were immediately shipped in interstate commerce * * *''. Hence we conclude that, even if it be assumed that the fish were imports, they have, under the admitted facts, been so acted upon as to establish a tax situs. The poundage fee involved is not a tax upon property but is a license or privilege tax on the business in which the fish company was engaged: *State v. Applegarth,* 81 Md. 293, 31 Atl. 961, 28 L. R. A. 812) ; *Mayor v. Goldstein,* 151 Ala. 473 (44 So. 113) ; *Barataria Canning Co. v. State,* 101 Miss. 890 (58 So. 769) ; *State v. Standard Oil Co.,* 61 Or. 438 (123 P. 40, Ann. Cas. 1914B, 179).

No question of interstate commerce is involved. The goods were not in transit but had come to rest with

an established tax situs. This question is not urged in the brief and we pass it without further comment.

■ The complaint was defective in that the kind of fish handled by the defendant fish company was not alleged. It will be recalled that the poundage fee is not the same on all kinds of fish. The complaint should have been specific in this regard. The answer, however, so far as it pertains to chinook and silverside salmon, aids the complaint as it is admitted that such fish were handled in the manner therein specifically alleged. As to the fish handled other than the chinook and silverside, there was an issue of fact to be determined in view of the denial as above mentioned. Under such state of the pleadings it was error to enter judgment. Plaintiff should have proceeded with its proof. This error probably occurred through inadvertence and no doubt the court would have taken evidence had attention been directed to such issue. However, we must consider the case as it is presented and it follows that the judgment entered must be reversed and the cause remanded with directions to proceed in accordance with this opinion.