Argued and submitted October 29, 1985, affirmed on appeal; on cross-appeal remanded for entry of judgment in favor of plaintiffs in the amount of $11,979 February 26, 1986

## FAST et al,
*Appellants-Cross-Respondents,*

*v.*

## DeRAEVE et al,
*Respondents-Cross-Appellants.*

(30101; CA A33388)

714 P2d 1077

Asa L. Lewelling, Salem, argued the cause for appellants. With him on the briefs was Marvin J. Weiser, Dallas.

Gary A. Rueter, McMinnville, argued the cause for respondents. With him on the brief was Haugeberg, Rueter, Stone & Gowell, P.C., McMinnville.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiffs (Fast) brought this action to enjoin defendants from flooding their land and for damage for loss of use of their property. Defendants (DeRaeve) pled that plaintiffs had acquiesced in defendants' building a dam on defendants' property and that, therefore, plaintiffs are estopped from seeking injunctive relief. The trial court denied injunctive relief, finding that plaintiffs had given defendants an irrevocable license amounting to an easement to flood plaintiffs' property by using their dam. The trial court awarded plaintiffs $19,900 damages for interference with the use of their property resulting from the flooding necessarily caused by defendants' dam. Both sides appeal.

The Fasts own farm land which abuts the DeRaeve property. Ash Swale Creek runs south to north through both properties. A short distance south of the common line, a tributary, Rutledge Fork, enters Ash Swale after crossing a substantial portion of the Fasts' property. In 1975 Marvin Fast[1] began to develop plans to build a dam on Ash Swale on his property. Marvin DeRaeve was also interested in a water storage project and hired Kline, a consulting engineer. Through Kline, DeRaeve learned of Fast's interest and contacted him. In April, 1976, Fast, DeRaeve, Kline and a contractor met at DeRaeve's home. Kline presented a plan for the "Marvin Fast and Marvin DeRaeve Project," which called for construction of four dams, three of which were to be on Fast's property. All four dams were needed to control the water flow and to prevent the flooding of Fast's property. DeRaeve was to pay for one of the three dams on Fast's land. In September, 1976, DeRaeve began construction of his dam. The concrete portion was finished in the late fall of 1976, and the dam was wholly completed in the fall of 1978. Despite DeRaeve's urgings that Fast proceed, no dams were ever built on Fast's property. In the spring of 1979 and in subsequent years flooding has occurred on part of Fast's property along Rutledge Creek, preventing the use of that land for crops.

Fast urges that there was not a sufficient oral agreement on which DeRaeve could rely to build the dam and that

---

[1] Paula Fast and Patricia DeRaeve are involved only as joint property owners with their husbands.

DeRaeve must show such an agreement in order to avoid the Statute of Frauds by part performance. The trial court found that DeRaeve had shown a "license by estoppel." We agree.

■■ A license by estoppel arises by operation of law to prevent an injustice. The license may arise from participation in a common enterprise, *Heisley et al. v. Eastman, et al,* 102 Or 137, 155, 201 P 872 (1921), and becomes irrevocable if permanent and valuable improvements are made in reliance thereon:

> "An oral and gratuitous permission when acted upon by the expenditure of a considerable sum of money in the construction of valuable improvements, which have been made on the faith of such permission and would have not have been made in the absence of such permission and would be either destroyed or materially lessened in value by revocation of such permission presents a situation making the doctrine of equitable estoppel peculiarly applicable * * *." 102 Or at 157.

See also *Powers et ux. v. Coos Bay Lumber Co.,* 200 Or 329, 414, 263 P2d 913 (1954); *Shepard v. Purvine,* 196 Or 348, 248 P2d 352 (1952).

■■ Although the Fasts dispute that there was an agreement that the joint project proceed, on *de novo* review we find that the facts show that they granted DeRaeve an irrevocable license to impound the waters of Ash Swale and Rutledge Fork. Kline testified that the parties agreed at the April, 1976, meeting to proceed with the joint project. Documents were submitted to the State Water Resources Board on behalf of both parties. In September, 1976, Fast's plans were approved by the state. He cleared the land and had the Rutledge Fork Channel deepened to facilitate the project. In October, 1978, Fast sent a letter to the Department of Water Resources requesting an extension of their permits.

During that time DeRaeve was building his dam at a cost of $52,000, and Fast visited the site more than once. He began to vacillate as to whether he would perform, but after the DeReave dam and reservoir were completed, the parties discussed filling the reservoir, and Fast agreed to watch the water level near Perrydale Road. The facts show that the DeRaeves relied on the Fasts' acquiescence in the joint plan and made improvements on that reliance. It would be inequitable to allow the Fasts to destroy or substantially impair

the DeRaeves' use of those improvements. *Shepard v. Purvine, supra,* 196 Or at 374. The privileges under the license are almost the same as the right would be under an easement, *Heisley et al v. Eastman et al, supra,* 102 Or at 155, and the trial judge was correct in allowing defendants to impound water in the reservoir at a level of 9-1/2 feet and in enjoining defendants from flooding or affecting plaintiff's land by any higher impoundment behind the dam.

■    The DeRaeves have cross-appealed from the award of $19,900 damages for the flooding of the Fasts' property. The testimony shows that the DeReaves agreed that they would pay some damages. On appeal they argue that the proof was too speculative for the trial court to award damages.

■    We agree with the Fasts that the evidence will support an award. Marvin Fast testified as to the rental value of the land and his additional expenses in having to farm around the flooded area. The trial court said that the rate of interest suggested by defendants' counsel in trial memorandum would be used to calculate damages. The suggested rate was 8.5 percent. However, the trial court mistakenly used a figure of 18.5 percent. Taking the court's other figures supported by the record and applying interest at 8.5 percent, we conclude that plaintiffs are entitled to a judgment for $11,979.[2]

Affirmed on appeal; on cross-appeal remanded for entry of judgment in favor of plaintiffs in the amount of $11,979.

---

[2] Defendants argue that the defense of laches applies to plaintiffs' claim. We do not find that the three years between the completion of the dam and the commencement of this litigation is an unreasonable delay. *Stephan v. Equitable Savings and Loan,* 268 Or 544, 569, 522 P2d 478 (1974).