Submitted on record and briefs August 13, resubmitted In Banc December 8, 1993, affirmed on both appeals February 23, 1994

Thomas H. and Esther H. NELSON,
*Appellants,*

*v.*

CITY OF LAKE OSWEGO,
an Oregon municipal corporation,
*Respondent.*

Thomas H. NELSON
and Esther H. Nelson, husband and wife,
individually and on behalf of
all other persons similarly situated,
and Daniel Reis and Betsy Reis, husband and wife,
*Appellants,*

*v.*

CITY OF LAKE OSWEGO,
an Oregon municipal corporation,
*Respondent.*

(CCV91-12-316; CA A78257, A76358)
(Cases Consolidated for Opinion Only)
869 P2d 350

Thomas H. Nelson, *pro se*, and Stoel Rives Boley Jones & Grey filed the briefs for appellants.

Thomas M. Christ, Scott J. Meyer and Mitchell, Lang & Smith filed the briefs for respondent.

WARREN, J.

Landau, J., concurring.

## WARREN, J.

Plaintiffs Nelson applied to defendant city for a permit to construct a house. In reviewing the application, city personnel found a problem with the property description and informed plaintiffs that a permit could be granted only if they applied for and obtained a lot line adjustment between their property and their neighbors', the Reises.[1] Plaintiffs and the Reises applied for the adjustment, and the city manager allowed it, subject to the requirement that the applicants execute "nonremonstrance" agreements, pledging that they would not oppose future street improvements or the inclusion of the property in a local improvement district. The city manager also required plaintiffs to convey a 55-foot drainage easement as a condition of development. That requirement was included in the order allowing the lot line adjustment and in the subsequent order allowing the permit for the house. Plaintiffs did not appeal the city manager's decisions to the city council, as they could have under applicable city code provisions. They conveyed the easement to the city before completing construction of the house.

■  Plaintiffs brought this circuit court action, stating eight claims. The first six assert that the nonremonstrance requirement violates the state and federal constitutions and is also contrary to state and federal statutes. In the remaining claims, plaintiffs contend that the drainage easement is a taking of their property, for which they seek, *inter alia*, monetary compensation. Their theory is that the city's requirement of and acquisition of the easement does not bear the necessary relationship to the impacts of what it permitted to satisfy the tests articulated in *Nollan v. California Coastal Comm'n*, 483 US 825, 107 S Ct 3141, 97 L Ed 2d 677 (1987), and, therefore, it violates the takings provisions of the federal and state constitutions.

The city moved to dismiss the action, contending that it arises out of a land use decision and that exclusive jurisdiction for review resides in the Land Use Board of Appeals. The trial court granted the motion as to the claims

---

[1] Notwithstanding the contrary indication in the caption, the Reises were not parties below and are not parties to the appeal. We use the term "plaintiffs" to refer to the Nelsons only.

involving the nonremonstrance agreements and entered an ORCP 67B judgment dismissing those claims. In case number CA A76358, plaintiffs appeal from that judgment. We agree with the trial court that those claims arise out of a land use decision, and that all of the issues that they present, including the constitutional issues, are subject to LUBA's exclusive jurisdiction. *Ackerley Communications, Inc. v. Mult. Co.*, 72 Or App 617, 620, 696 P2d 1140 (1985), *rev dismissed* 303 Or 165, 734 P2d 885 (1987); *see also Dunn v. City of Redmond*, 303 Or 201, 735 P2d 609 (1987).

■     The trial court denied the motion to dismiss the taking claims "to the extent [they apply] to compensation." On the merits of those claims, the court subsequently granted the city's motion for summary judgment. Plaintiffs appeal from that judgment in case number CA A78257. The city argues, in a cross-assignment in that appeal, that the court erred by denying the motion to dismiss the taking claims. It contends that those claims, too, are subject to LUBA's exclusive jurisdiction. We disagree. The circuit courts have jurisdiction over inverse condemnation actions arising out of land use decisions, concurrent with LUBA's jurisdiction to consider taking arguments in its review of land use decisions. *Springer v. City of Bend*, 111 Or App 136, 826 P2d 1, *rev den* 313 Or 354 (1992); *see also Dunn v. City of Redmond, supra*.[2]

■     The city also argues that the inverse condemnation claims are barred because plaintiffs did not appeal to the city council from the city manager's requirement that they convey the easements as a condition of permitting the building. Therefore, the city asserts, plaintiffs failed to "exhaust administrative remedies" and are precluded from prosecuting their taking claims. The city relies principally on *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 581 P2d 50 (1978). However, that case does not assist the city, because it differs from this one in two critical respects. First, although the court in *Fifth Avenue* used "exhaustion of remedies" terminology, it did not use the term in the sense that a

---

[2] We use the terms "inverse condemnation" and "taking" interchangeably in describing the two claims in question. Technically, "inverse condemnation" is the label for a judicial proceeding brought by a property owner to remedy an alleged "taking" that results from governmental actions other than the exercise of the eminent domain power.

landowner must pursue available local appeals before bringing an inverse condemnation action, and that is not what the court required. Rather, what *Fifth Avenue* and related Oregon and federal cases hold—under the doctrine that is more commonly called "ripeness" than "exhaustion" in takings jurisprudence—is that a landowner cannot base a regulatory taking action on a predictive assertion that local or other government regulations, when applied to his property, will prevent any beneficial use of it. Generally, the landowner cannot base such an action on an actual local decision that denies or restricts one particular use. As a general rule, before seeking a judicial remedy, the owner must first seek permission at the local level to conduct alternative productive uses, or must seek local variances from or amendments to the regulations under which the use initially intended was denied or restricted. In short, *Fifth Avenue* and related cases are not concerned with an owner's pursuit of all available local appeals on his application for a particular use or land use decision, but with whether the owner has applied for enough uses or decisions so that the scope of what the local regulations permit or prohibit can be known.

The second difference between this case and *Fifth Avenue* is that the latter, like other Oregon and federal cases, applies the ripeness principle only in the context of pure regulatory takings claims, where the owner asserts that regulatory restrictions on land use effect a complete deprivation of the beneficial or economically viable use of property that is and remains privately owned. Neither *Fifth Avenue* nor any other case of which we are aware attaches an exhaustion or ripeness prerequisite to the litigation of claims, like those here, that are based on a development condition that has resulted in the actual acquisition of a private property interest by the government.[3]

In addition to the fact that *Fifth Avenue* lends no support to the city's contentions that exhaustion or ripeness

---

[3] We are aware that "impacts" versus "exactions" issues, of the kind presented in *Nollan* and here, have sometimes been labeled as regulatory taking problems. The label does not disturb our distinction or analysis. An "exaction" of a property interest as a condition of development entails a governmental or public *acquisition* of the interest, and, as we discuss, different problems and constitutional tests arise from those when the pristine question is presented of whether a *regulation* denies all beneficial or economically viable use of property.

is required under these circumstances, other cases expressly negate those contentions. In *Williamson Planning Comm'n v. Hamilton Bank*, 473 US 172, 105 S Ct 3108, 87 L Ed 2d 126 (1985), a landowner brought an action for a regulatory taking pursuant to 42 USC § 1983, based on the disapproval of a subdivision plat. The owner had not invoked its right to apply to the same administrative body that had disapproved the plat for a variance from the regulations on which the disapproval was predicated. The Supreme Court adhered to traditional ripeness analysis in concluding that a variance application to "the initial decision-maker" was a necessary prerequisite to the judicial action, but it also specifically noted that exhaustion of available appeals from the first decision-maker to other administrative bodies was not required before judicial relief could be sought. *See* 473 US at 192-94.[4]

In *Suess Builders v. City of Beaverton*, 294 Or 254, 656 P2d 306 (1982), the court spoke to the second of the factors that distinguish this case from *Fifth Avenue*. The court in *Suess Builders* adhered to the exhaustion/ripeness principle of *Fifth Avenue*, and held that its requirements were applicable to the regulatory taking aspects of the plaintiffs' claim. It also concluded, however, that some of the plaintiffs' other taking allegations went "beyond the simple restrictive effect" of the city's regulations and, therefore, notwithstanding any failure to exhaust remedies, were sufficient to survive a motion to dismiss. The court explained that the latter allegations were "broad enough to encompass a hypothetical claim that defendants told plaintiffs that the property was certain to be acquired, that it would be useless to pursue any proposals for private development, and that [*the government*] *began to acquire easements* [*from the plaintiffs*] *for certain facilities.*" 294 Or at 262-63. (Emphasis supplied.)

There is good reason why the courts have not extended the exhaustion/ripeness requirement to cases like this one: They have nothing to do with its purpose. In *MacDonald, Sommer & Frates v. Yolo County*, 477 US 340, 348, 106 S Ct 2561, 91 L Ed 2d 285 (1986), the Court explained the purpose that the requirement serves in regulatory takings cases:

---

[4] Here, as in *Williamson*, the plaintiffs allege a violation of 42 USC § 1983 and of the Fifth Amendment.

> "It follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property. A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes."

The tests for regulatory takings under the state and federal constitutions are whether the owner is deprived of *all* substantial beneficial or economically viable use of property. *See Lardy v. Washington County*, 122 Or App 361, 363, 857 P2d 885, *rev den* 318 Or 246 (1993). The reason why the exhaustion/ripeness analysis makes sense in that context is that, with rare exceptions, no *particular* denial of an application for a use can demonstrate the loss of *all* economic use. That is so for two reasons. First, the fact that one use is impermissible under the regulations does not necessarily mean that other economically productive uses are also precluded; and second, until alternative uses are applied for or alternative means of obtaining permission for the first use are attempted, there can be no conclusive authoritative determination of what is legally permitted by the regulations. Therefore, the courts cannot perform their adjudicative function on a claim predicated on a single denial, because something more must be decided by the local or other regulatory authority before there *can* be a demonstrable loss of all use and, therefore, a taking. *See Suess Builders v. City of Beaverton, supra*, 294 Or at 261-62.

In cases like this one, conversely, the condition has been imposed and the easement has been acquired by the city. There is nothing left to happen at the local or administrative level in order for the claim to be susceptible to adjudication; the only question is whether what *has* occurred *is* a taking under the legal test that the condition must bear a reasonable relationship to the impacts of the use to which the city has attached it. *Dolan v. City of Tigard*, 317 Or 110, 854 P2d 437, *cert granted* ____ US ____ (1993). The facts on both sides of the equation are readily susceptible to conventional judicial proof, and the adjudication of the facts and of the applicable law is well within the judicial competence.

The city contends further, in support of its exhaustion argument, that, had plaintiffs appealed the city manager's decision to the council, it "might have removed the

condition for which plaintiffs now seek damages," and "judicial intervention may [have] become unnecessary." That contention alters nothing. The city does not suggest that it has not acquired the easement, that the city manager was not authorized to make a decision resulting in the acquisition or that the acquisition was impermissible without city council approval. All that the city does is speculate that things might have been different if plaintiffs had taken an action that, under the decisions of the United States and Oregon Supreme Courts, they were not required to take as a condition precedent to bringing these claims. We reject the city's exhaustion argument,[5] and turn to the merits.

■      Plaintiffs contend that there is no "reasonable relationship" or "essential nexus" between the *lot line adjustment* and the drainage easement and, therefore, the easement condition is an uncompensated taking under *Nollan v. California Coastal Comm'n, supra. See also Dolan v. City of Tigard, supra*. The argument begs the question. The easement was also a condition of the *house permit*; plaintiffs have constructed the house, and they did not convey the easement until after that permit was issued and construction had begun. The lot line adjustment has no independent bearing on the merits of the taking claims. As we made clear in *Lardy v. Washington County, supra*, 122 Or App at 364-65, plaintiffs are not free to seek the answer that they want by misdefining the question. As a matter of law, the only relevant inquiry *can* be whether the easement condition is sufficiently related to the impacts of the house development to survive scrutiny under *Nollan* and *Dolan*. Assuming that plaintiffs' argument is adequate to enable us to address that decisive question, we hold that the summary judgment record demonstrates conclusively that the drainage easement condition is reasonably related to the impacts of the development that the city permitted subject to the condition.[6]

---

[5] Under the statutes governing appeals *to LUBA*, exhaustion of local remedies is made jurisdictional. ORS 197.825(2)(a). There is no corresponding *jurisdictional* limitation on inverse condemnation actions.

[6] Plaintiffs seem also to suggest that *Nollan* requires a more demanding test than a "reasonable relationship" between "exactions" and impacts. After the parties submitted their briefs, the Oregon Supreme Court held otherwise in *Dolan*. In any event, because plaintiffs do not propose *any* comparison of the "exaction" of the easement with the impacts of the permitted development, their argument could not

Affirmed on both appeals.

**LANDAU, J.,** concurring.

I agree with the majority that plaintiffs' claims involving the nonremonstrance agreements arise out of a land use decision and are, therefore, subject to LUBA's exclusive jurisdiction. I further agree that plaintiffs' inverse condemnation claims are not subject to the exclusive jurisdiction of LUBA. And, although I agree with the majority's decision to affirm the dismissal of those inverse condemnation claims, I do not agree with the majority's rationale for doing so. The majority wrongly rejects the city's contention that plaintiffs' inverse condemnation claims are not ripe and, instead, disposes of the case on its merits. In my view, the appropriate basis for affirmance is the lack of ripeness.

Ordinarily, one who seeks judicial relief must demonstrate that the challenged decision is final, and all avenues of administrative relief have been pursued to no avail. *Oregon City v. Hartke*, 240 Or 35, 44, 400 P2d 255 (1965). The principal reason for imposing that requirement is to prevent premature interruption of agency decision-making processes, "especially when agency expertise will play a large role in any decision on the merits." *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 615, 581 P2d 50 (1978) (quoting *Bay River v. Envir. Quality Comm.*, 26 Or App 717, 721-22, 554 P2d 620, *rev den* 276 Or 555 (1976)); *see also Abbott Laboratories v. Gardner*, 387 US 136, 148, 87 S Ct 1507, 18 L Ed 2d 681 (1967). If the administrative process is allowed to play out completely, judicial intervention may become unnecessary. Accordingly, if that administrative process is short-circuited, judicial relief is not available. *See generally* 4 Anderson, *American Law of Zoning 3d* § 30.11 (1986).

That requirement—occasionally labelled "exhaustion," but more correctly known in this context as "ripeness"—applies to claims that a local government decision amounts to a taking of property without compensation, in violation of the Fifth and Fourteenth Amendments to the federal constitution. In *Hodel v. Virginia Surface Mining & Recl. Assn.*, 452 US 264, 101 S Ct 2352, 69 L Ed 2d 1 (1981),

suffice to show any operational difference that a different legal test might make here, even if their reading of *Nollan* were correct.

for example, the Supreme Court reversed a district court's decision on the merits of a claim that a federal law controlling surface mining effected an unconstitutional taking. It said:

"There is no indication in the record that appellees have availed themselves of the opportunities provided by the Act to obtain administrative relief by requesting either a variance * * * or a waiver from the surface mining restrictions * * *. If [the property owners] were to seek administrative relief under these procedures, a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating the need to address the constitutional questions. The potential for such administrative solutions confirms the conclusion that the taking issue decided by the District Court simply is not ripe for judicial resolution." 452 US at 297. (Footnotes omitted.)

*See also MacDonald, Sommer & Frates v. Yolo County*, 477 US 340, 348, 106 S Ct 2561, 91 L Ed 2d 285 (1986); *Agins v. Tiburon*, 447 US 255, 260, 100 S Ct 2138, 65 L Ed 2d 106 (1980).

The same ripeness requirement is imposed in takings claims brought under Article I, section 18, of the Oregon Constitution. In *Fifth Avenue Corp. v. Washington Co., supra*, for example, the Oregon Supreme Court upheld the dismissal of a landowner's challenge to the constitutionality of a comprehensive plan and zoning ordinance, because the landowner had failed to request amendments to either the plan or the zoning ordinance. 282 Or at 615-22.

Whether the claim is for compensation or for a declaration of unconstitutionality, the ripeness requirement applies with equal force. As the Oregon Supreme Court said in *Suess Builders v. City of Beaverton*, 294 Or 254, 656 P2d 306 (1982), in either case,

"the landowner may not simply rest on the apparent preclusive effect of the [challenged] plan or other regulation when administrative procedures exist by which [the landowner] might obtain at least temporary or partial relief, including administrative procedures for amending the plan. If such procedures for seeking relief exist, they must be pursued." 294 Or at 261.

In this case, plaintiffs challenge the constitutionality of a city manager's decision to grant a development permit

only on condition that plaintiffs convey to the city a 55-foot drainage easement. Under the city's development ordinance, plaintiffs could have taken the city manager's decision to the city council for relief from those conditions. However, plaintiffs chose not to do that. Instead, they proceeded directly to court, alleging that the city manager's imposition of the condition constitutes an uncompensated taking of property, in violation of both federal and state constitutions.

Under the circumstances, plaintiffs' claims are not ripe. On the basis of the record before us, we simply have no way of knowing what the city council would have done. It might have granted plaintiffs' relief from the drainage easement condition. Or a compromise position might have been reached. In either event, had plaintiffs taken their case to the city council, as the development ordinance allows, they might not have had to bring their claims in the first place. Thus, as in *Hodel v. Virginia Surface Mining & Recl. Assn., supra*, if plaintiffs were to seek relief from the conditions imposed by the city manager, "a mutually acceptable solution might well be reached \* \* \*, thereby obviating the need to address" plaintiffs' takings claims. 452 US at 297.

The majority declines to follow the course I have described. If I understand its opinion correctly, the majority concludes that ripeness is not required in this case because that prerequisite to judicial review only applies to "pure regulatory takings claims," and plaintiffs' claims are not of the "pure regulatory takings" variety. The majority appears to limit the category of "pure" takings claims to those in which

> "the owner asserts that regulatory restrictions on land use effect a complete deprivation of beneficial or economically viable use of property that is and remains privately owned." 126 Or App at 420.

The majority contrasts that class of takings cases with "conditions" cases, in which the legal test is whether the condition imposed by a local government "bears a relationship to the impacts of the use" to which the government has attached the condition.

Assuming, for the sake of argument, that the majority's categorization of takings cases is correct,[1] there is no

---

[1] I have some doubts. Since at least *Agins v. Tiburon, supra*, virtually all regulatory takings claims have been subject to the same test:

rule that ripeness does not apply to "conditions" cases. Directly on point is *Williamson Planning Comm'n v. Hamilton Bank*, 473 US 172, 105 S Ct 3108, 87 L Ed 2d 126 (1985). In that case, the plaintiff applied for a permit to develop its property. The local planning commission disapproved the application, because it failed to satisfy eight conditions required by the local zoning ordinance. That zoning ordinance allowed the plaintiff to apply to the planning commission for relief from those conditions. The plaintiff did not do that and, instead, brought a regulatory takings action, claiming that the conditions imposed by the planning commission effected a taking of the plaintiff's property. The Court refused to hear the merits of the constitutional challenge, because the plaintiff had failed to take advantage of the opportunity to obtain a variance from the conditions imposed by the planning commission. The Court observed that, after receiving the decision of the planning commission on the plaintiff's application,

> "[the plaintiff] did not seek variances that would have allowed it to develop the property according to its proposed plat, notwithstanding the Commission's finding that the plat did not comply with the zoning ordinance and subdivision regulations. It appears that variances could have been granted to resolve at least five of the Commission's eight objections to the plat." 473 US at 188.

Thus, the Court held, in the face of the plaintiff's refusal to follow the procedures for requesting a variance, it could

---

"The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests or denies an owner economically viable use of his land." 447 US at 260. (Citations omitted.)

Whether a claim is based on a challenged use restriction or on the imposition of a permit condition, it is routinely denominated by the courts as a "regulatory takings claim" and is subject to the same test. In *Nollan v. California Coastal Comm'n*, 483 US 825, 107 S Ct 3141, 97 L Ed 2d 677 (1987), which the majority cites as the paradigm of the "conditions" class of cases, the United States Supreme Court referred to the plaintiffs' claim simply as a "takings" claim and applied the *Agins* test. Similarly, in *Dolan v. City of Tigard*, 317 Or 110, 854 P2d 437, *cert granted* ____ US ____, 114 S Ct 544, 126 L Ed 2d 446 (1993), another "conditions" case, the Oregon Supreme Court characterized the plaintiffs' claim in the same fashion and applied the same test.

To be sure, depending on the nature of the claim, one part of the *Agins* test may be more or less relevant than another. But the fact remains that a claim that regulatory action effects a taking of property, whether by use restriction or exaction of a permit condition, is commonly referred to as a "regulatory takings claim" and is subject to the two-part *Agins* test.

hardly complain that the disapproval was the equivalent of a final decision on its application. The case, it concluded, was not ripe. *See also Littlefield v. City of Afton*, 785 F2d 596, 609 (8th Cir 1986) (challenge to city decision to grant development permit only on condition that applicant convey public right-of-way held not ripe, because of the plaintiff's failure to request variance).

The majority acknowledges the *Williamson* decision, but reads it very differently than I do. The majority contends that, in *Williamson*, the Court held that an applicant need only pursue administrative remedies through the first decision-maker and that "exhaustion of available appeals from the first decision-maker to other administrative bodies" is not required. I have searched the *Williamson* decision in vain for any such holding. The portion of the decision that the majority cites in support for its statement of *Williamson's* holding refers to an entirely different issue.

The plaintiff in *Williamson* had argued that imposing a requirement that it seek variances from the planning commission would be inconsistent with the general rule that exhaustion of administrative remedies is not normally required in cases brought under 42 USC § 1983. *See generally Patsy v. Florida Board of Regents*, 457 US 496, 102 S Ct 2557, 73 L Ed 2d 172 (1982). The Court held that there was no inconsistency. The key, said the Court, lies in the distinction between ripeness and exhaustion of administrative remedies. Ripeness concerns "whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Williamson Planning Comm'n v. Hamilton Bank, supra*, 473 US at 193. Exhaustion concerns procedures by which a person obtains review of the lawfulness of an adverse decision. 473 US at 193. The distinction, the Court said, is best illustrated by comparing the difference in that case between applying to the commission for relief from the conditions and appealing to the County Board of Zoning Appeal for review of the lawfulness of those conditions. Thus, the distinction lies in the nature of the relief that may be obtained from different agencies, not in the level of review in terms of organizational hierarchy. *See generally* Smith, "Ripeness for the Taking Clause: Finality and

Exhaustion in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*," 13 Ecology LQ 625, 634-36 (1986).

In this case, the initial decision-maker, the city, never was given the opportunity to arrive at a definitive position on the imposition of the drainage easement condition; the city council could have simply disagreed with the city manager and removed the condition.[2] Thus, under *Williamson*, plaintiffs' takings claims are not ripe. Plaintiffs do not have to seek administrative review by LUBA of the lawfulness of the imposition of the condition imposed by the city. That is the sort of "exhaustion" that is not required under *Williamson*.

The majority also reasons that, because plaintiffs voluntarily acceded to the city manager's condition of conveying a drainage easement, the city's decision is, in fact, final and ripe for our review. The majority cites no authority for this proposition, and I am aware of none. To the contrary, it seems to me quite inconsistent with the admonition in *Suess Builders v. City of Beaverton, supra*, that "the landowner may not simply rest on the apparent preclusive effect of the [challenged] plan or other regulation," when there exist administrative avenues of relief. 294 Or at 261.

The majority acknowledges *Suess Builders*, but again reads the decision very differently than I do. The majority points out that one claim involving the local government's acquisition of easements was held not subject to the doctrine of ripeness. However, the majority reads into a single phrase in the opinion more than its context will bear.

In *Suess Builders*, the plaintiffs alleged that, apart from enactment of a comprehensive plan, the defendant local governments had engaged in an effort to repress the value of

---

[2] The city's development ordinance provides that, on appeal from the city manager's decision, the record is opened for the receipt of "oral and written testimony and materials provided by appellant, the city or other interested persons." It further provides that the city manager's decision may be upheld, modified, remanded or reversed on the basis of that evidence. That appeal process provides *de novo* consideration of plaintiffs' application, which at least potentially, could be based on an entirely new record. It does not involve a review of the lawfulness of the city manager's decision. Under *Williamson*, that procedure is precisely the sort that must be pursued before a decision is considered ripe for judicial review.

the plaintiffs' property by making it look as if it were going to be condemned for a public park, so that they ultimately could purchase the land at less than market value. According to the plaintiffs, they were induced "to forego further attempts to develop their property" by repeated assurances that their property would be acquired, by warnings that "it would be useless to pursue any proposals for private development" and by the defendants' conduct in actually acquiring easements. 294 Or at 263. Under the circumstances, the court held, a ripeness requirement would serve no purpose, the defendants having already assured the plaintiffs that no development was possible.

The majority seizes on the mention of the defendants having acquired easements in *Suess Builders* and declares on the basis of that language that ripeness does not apply here either. In so doing, the majority misses the point of the court's holding. The point was that it would have been futile for the plaintiffs to have been required to attempt to demonstrate the ripeness of their claim in the light of the defendants' conduct and statements that no development would have been allowed. The acquisition of easements was not the basis of the plaintiffs' claim. It was instead listed as a reason — along with the allegations of the defendants' repeated assurances that they intended to purchase the property for a park — for concluding that the plaintiffs were, indeed, induced to believe that no development would have been allowed. *Suess Builders*, therefore, stands squarely for the proposition that ripeness is required in all takings cases unless a plaintiff can establish the futility of complying with that requirement. *See Note*, "Inverse Condemnation Damages in Oregon — *Suess Builders Co. v. City of Beaverton*," 20 Will L Rev 169, 177 (1984). There is no allegation of futility here, and so the ripeness requirement applies.

Because plaintiffs failed to take their case to the city council, their inverse condemnation claims are not ripe, and I would affirm the trial court's dismissal of those claims on that basis.

Edmonds and Leeson, JJ., join in this concurrence.