Argued and submitted November 25, 1998, affirmed March 17, petition for review denied July 6, 1999 (329 Or 61)

## L.A. DEVELOPMENT,
a general partnership consisting of Louis J. Fasano
and Arthur and Associates Real Estate, Inc.,
*Appellant,*

*v.*

## CITY OF SHERWOOD,
a municipal corporation, Jane Aamold, Bill Boyle,
Barry Kennedy, Mark Cottle and
Mayor Walt Hitchcock,
*Respondents.*

(C960475CV; CA A100395)

977 P2d 392

William C. Cox argued the cause for appellant. With him on the briefs was Gary P. Shepherd.

Timothy J. Sercombe argued the cause for respondents. With him on the brief was Preston Gates & Ellis LLP.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Warren, Senior Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

Plaintiff appeals from the dismissal of its complaint for damages resulting from the trial court's grant of defendants' summary judgment motion. ORCP 47. We affirm because plaintiff is estopped from claiming damages as a matter of law.

Plaintiff developed two land projects in the City of Sherwood. The initial subdivision received approval from the planning commission in two phases: Kathy Park I in November 1991 and Kathy Park II in November 1992. The final "planned unit development," William Park, received preliminary approval through the adoption of an ordinance by the city council in April 1994 and final approval from the city planning commission in February 1995. In January 1996, plaintiff sent a letter to the city demanding refund of "excess system development charges and 'fair share' assessments" paid for the projects. In May 1996, plaintiff filed a complaint in circuit court contesting the constitutionality of the conditions imposed on it by defendants[1] in approving the developments. By that time, the projects had been completed and were occupied.

In its complaint, plaintiff does not seek reversal or modification of the project approvals. Rather, it claims damages for the cost of complying with the conditions under the theories that the conditions amounted to:

> "(1) [the] taking of private property without just compensation in violation of the Oregon Constitution, Article I, section 18, and the Fifth Amendment of the U.S. Constitution, made applicable to the states through the Fourteenth Amendment; (2) [a] violation of [plaintiff's] Fourteenth Amendment Equal Protection rights granted by the US Constitution; (3) [a] violation of [plaintiff's] privileges and immunities granted by the Oregon Constitution, Article I, Section 20; [and] (4) [a] violation of [plaintiff's] USC § 1983 civil rights for the violation of [plaintiff's] Fifth Amendment

---

[1] Defendants include the City of Sherwood and the Mayor and city council members of Sherwood at the time preliminary approval was given for William Park, with the exception of Jane Aamold who was not a city council member at that time. Apparently, Aamold became a member afterwards, during the period plaintiff argues that other developers received more favorable treatment.

and Fourteenth Amendment rights * * *." (Footnotes omitted.)

Defendants raise the affirmative defense of estoppel.

We review the factual record in the light most favorable to plaintiff, the nonmoving party in the summary judgment proceeding. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Plaintiff's actions are uncontested. Plaintiff expressed displeasure with many, if not all, of the conditions before final approval of the developments and did not at any time concede to the city the legality of the imposed conditions. Before final approval of the William Park project, plaintiff consulted an attorney and considered the possibility of contesting the conditions or bringing a suit against the city after approval occurred. Plaintiff's representative, Lou Fasano, acknowledged in an affidavit that he signed the documents agreeing to the conditions, but he expressed to others that he did so "under duress."[2] Fasano explained in his deposition that he entered into agreements with the city regarding the conditions for William Park because they had reached a point where,

"* * * just let's sign it and get out of here, or you reach a disagreement here and you sign it, because it's all been done.

"Now, in the negotiations as a hostage, this is the best you can do. Then you move from there to whatever is available to you next, whether it's LUBA or whatever. There was no reason to make an objection at signing this.

"This was at a point where we had made a decision to go forward with the project, as marginal as it was, because we didn't have many alternatives. If we don't go forward with this project, we fold our business.

"This is a 41-lot—William Park is a 41-lot subdivision. That's the biggest project we had ever done. That's a two-year project for a two-man firm. If it doesn't go, we're out of business. We're dead. We have nothing to sustain us for the

---

[2] James Harris, an engineer retained by plaintiff for the projects, says in his affidavit that Fasano "indicated on several occasion[s] at meetings with City staff and our firm that he was being forced to do something which he felt was unfair and that the City had put him into a situation which required him to go along or lose his project. He indicated he was being forced to go along under duress."

next two years. So if you can at all make this thing work somehow, you do. That's where we were at this point."

The claim of estoppel arises because plaintiff had a right to appeal the imposition of the conditions to the Land Use Board of Appeals (LUBA) within 21 days of receiving the notice of final approval for the projects. *See* ORS 197.825; ORS 197.830. In addition to that clearly available avenue of redress that plaintiff could have pursued, we also assume, for sake of discussion, that circuit court remedies might have been available at the same time or become available to plaintiff along the way. *See* ORS 197.825(3); *Boise Cascade Corp. v. Board of Forestry*, 325 Or 185, 196, 935 P2d 411 (1997). Be that as it may, the time that some recognized remedy could have been pursued to challenge or to avoid the conditions for which plaintiff now seeks damages came and passed approximately four years ago. Throughout the period from 1991 through 1995, plaintiff disregarded those remedies, completed the developments in compliance with the conditions imposed by the city and sold lots in the developments. Plaintiff admits the city constructed a regional storm water facility and put in a well within the Kathy Park project. In addition, it is uncontroverted that the lots were sold with right of way and easement dedications that had been part of the conditions of approval. Also, Fasano admits that plaintiff made a profit on the sales. The issue is whether, in light of these facts, plaintiff is estopped from claiming damages for the costs of complying with the conditions.

In *Nelson v. City of Lake Oswego*, 126 Or App 416, 869 P2d 350 (1994), we affirmed the right of landowners challenging requirements imposed by a city in connection with a building permit to raise inverse condemnation claims with the circuit court rather than appealing administratively. We distinguished the facts in *Nelson* from the facts in *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 581 P2d 50 (1978), and *Suess Builders v. City of Beaverton*, 294 Or 254, 656 P2d 306 (1982). The Oregon Supreme Court held in those cases that, where administrative procedures exist for amending zoning plans, those procedures for seeking relief must be pursued rather than seeking relief from a court of law. *Suess Builders*, 294 Or at 261; *Fifth Ave.*, 282 Or at 622. We

explained in *Nelson* that, where a claim is based on a development condition that results in the actual acquisition of a private property interest by the government, rather than a speculative "taking" based on a zoning plan, the failure to exhaust administrative remedies is not a bar to litigation. 126 Or at 420. However, this case presents an issue that differs from the issue of whether plaintiff was required to exhaust its remedies by direct review before it could bring a claim for damages. Unlike in *Nelson*, the city raises the issue of its reliance on plaintiff's failure to pursue its other remedies and plaintiff's use of the benefits that accrued from plaintiff's compliance with the city's conditions.

There is controlling precedent on the issue of estoppel by the acceptance of benefits derived from governmental action. In *State v. Jutstrom Fish Co.*, 149 Or 362, 39 P2d 355 (1935), the state sought payment of a poundage tax on fish as required by statute. The defendant, Jutstrom Fish Company, had executed a bond guaranteeing payment of the tax in order to obtain a wholesale dealer's license. After receiving the license, the defendant operated as a wholesale fish dealer for at least two years but failed to pay the poundage tax. In response to the state's complaint seeking to collect the tax, the defendant claimed that the statute providing for the tax was unconstitutional and void on its face. The court did not reach the merits of that claim:

> "The defendants are not in a position to assert that the statute imposing a poundage tax on fish purchased or received, regardless of where they were caught or taken, is unconstitutional. The statute was known to them when the bond was executed. In other words, the state was induced to issue a license to the Jutstrom Fish Co. by reason of the bond guaranteeing payment of the poundage tax, and both principal and surety are estopped to assert its invalidity. As stated in *United States v. Hodson*, 10 Wall. 395 (19 L. Ed. 937), and cited with approval in *Daniels v. Tearney*, 102 U.S. 415 (26 L. Ed. 187):
>
> " 'When a bond is voluntarily entered into and the principal enjoys the benefits it was intended to secure, and a breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such a defense.' " 149 Or at 367.

The holding in *Warren Construction Co. v. Grant*, 137 Or 410, 299 P 686, 2 P2d 1118 (1931), also supports the city's argument. Grant and the other defendants sought to enjoin Warren and the highway commission from building a certain portion of highway in Polk county. A trial court granted Grant's[3] motion for a restraining order enjoining Warren from proceeding on the construction work, contingent on Grant executing a bond from which damages would be paid to Warren if the injunction was later found to be wrongful. Grant executed the bond and Warren was forced to close down its rock crushing and paving plant for the project. The injunction was ultimately dissolved. Two years later, Warren sued Grant for damages stemming from the imposition of the injunction. In their answer, Grant denied the existence of the injunction and that Warren had been damaged. The court held that Grant, "having accomplished their purpose and obtained an advantage by the order, even if irregularly issued, should now be estopped from denying the efficacy thereof or liability for damages directly caused by their own acts." *Warren*, 137 Or at 416.

Here, plaintiff had legal remedies available, chose not to pursue them and, as a result, reaped benefits by not pursuing those remedies. Under similar circumstances, private parties have been held estopped in their transactions when they have failed to avail themselves of potential remedies and as a result, received benefits. For instance, in *Kittleson v. Tennant Agency*, 242 Or 610, 411 P2d 94 (1966), when a holder of a note sought to obtain judgment against a corporation, the corporation claimed that the persons who had executed the note had done so without authority. The court noted that, in the year between the execution of the note and the commencement of the suit, the corporation had not pursued any legal proceedings to disavow the note but had the benefit of the monies represented by the note. As a result, the court held that, "[w]hen a corporation, with full knowledge of the facts, accepts and retains the benefits of an unauthorized contract, it will be bound thereby." *Kittleson*, 242 Or at 614.

---

[3] Apparently, Grant was not the only party seeking the injunction nor the only party later sued by Warren Construction. For ease of explanation in this opinion, we use "Grant" to refer to those parties collectively.

Similarly, in *Fast v. DeRaeve*, 78 Or App 97, 714 P2d 1077 (1986), we held that the plaintiffs were estopped from enjoining the defendants from flooding their land and from recovering damage for loss of use of their property because the defendants had made improvements based on the flooding. In light of those precedents, we know of no reason why estoppel should not also apply to the legal consequences arising from agreements with a public or governmental body.[4] Just as Grant and Jutstrom Fish Company were estopped from denying the effect of the legal benefits that they had procured, so too is plaintiff estopped from claiming damages when it benefited from the city's approval by refraining from pursuing its rights under ORS chapter 197. Accordingly, the

---

[4] Other jurisdictions have reached the same conclusion under similar facts. In *Pfeiffer v. City of La Mesa*, 69 Cal App 3d 74, 78 137 Cal Rptr 804, 806 (1977), a property owner sued a city for inverse condemnation after the owner dedicated an easement and constructed a storm drain as conditions imposed for a building permit. The owner alleged that it was compelled by business necessity to accept the invalid conditions. The California court held:

"[T]he compulsion was of their own making. They signed the lease agreement and unilaterally decided it was to their economic advantage to proceed with the construction to meet its requirements rather than make use of the orderly procedure which has been provided to resolve such controversies. * * * If every owner who disagrees with the conditions of a permit could unilaterally decide *to comply with them under protest, do the work,* and file an action in inverse condemnation on the theory of economic coercion, complete chaos would result in the administration of this important aspect of municipal affairs.

"It is fundamental that a landowner who accepts a building permit and complies with its conditions waives the right to assert the invalidity of the conditions and sue the issuing public entity for the costs of complying with them. * * * By declining to avail themselves of [mandamus] procedures, plaintiffs cannot convert that right into a cause of action in inverse condemnation." 69 Cal App 3d at 78.

*See also Covington Court, Ltd. v. Village of Oak Brook*, 77 F3d 177, 180 (7th Cir 1996) (holding that failure to contest negotiated development conditions bars later taking claim because developer "reaped the benefit of its bargain"); *Trimen Development Co. v. King County*, 65 Wash App 692, 702, 829 P2d 226, 231 (1992), *aff'd on other grounds* 124 Wash 2d 261, 877 P2d 187 (1994) (concluding that developer's claims were barred by estoppel because the court could not "countenance allowing a developer to reap the advantages of final plat approval obtained without challenge to the approval conditions, and only bring a challenge to those conditions after the municipality has lost any ability to negotiate a solution to the problem other than refund of the fee"); *Schott v. City of Kingman*, 461 F2d 593, 594 (9th Cir), *cert den* 409 US 981 (1972) (developer cannot obtain compensation for water line easements as condition of subdivision approval "after having enjoyed the benefits and profits of dedication").

trial court did not err in granting defendants' motion for summary judgment based on the affirmative defense of estoppel.

Affirmed.