Argued and submitted September 5, reversed and remanded with instructions October 29, reconsideration denied December 19, 1986, petition for review allowed February 10, 1987 (302 Or 614)

DUNN,
*Petitioner,*

*v.*

CITY OF REDMOND,
*Respondent,*

*and*

DESCHUTES COUNTY,
*Respondent below.*

(LUBA 84-074; CA A40877)

727 P2d 145

Roger L. Ellingson, Bend, argued the cause and filed the brief for petitioner.

Edward J. Sullivan, Portland, argued the cause for respondent City of Redmond. With him on the brief was Sullivan, Sherton, Pfeiffer, Johnson & Kloos, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner seeks review of LUBA's affirmance in his appeal from two ordinances of the city of Redmond. The ordinances, enacted in 1985, designated petitioner's property as open space park reserve and required that it be preserved for future use as a public park. Although residential use is not permitted outright by the ordinances, they allow the existing residential use on petitioner's property to continue as "nonconforming" until the property is "acquired by public agency for park uses." The ordinances also establish a number of conditional uses, none of which petitioner had applied for as of the time when he appealed to LUBA. Petitioner's principal contention before LUBA and us is that the 1985 ordinances, together with the city's prior regulatory and enforcement activities and its purportedly bad faith negotiations and other efforts directed at acquisition of the property, constitute a taking in violation of the Fifth Amendment to the United States Constitution and Article I, section 18 of the Oregon Constitution.[1] LUBA concluded that there was no taking under the tests formulated in *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 581 P2d 50 (1978), and *Suess Builders v. City of Beaverton,* 294 Or 254, 656 P2d 306 (1982).

■ The threshold question, which the parties do not address and which LUBA mentioned only in passing, is whether LUBA had jurisdiciton over petitioner's appeal. It is clear that the city's adoption of the two ordinances was a "land use decision," ORS 197.015(10)(a)(A), that LUBA has exclusive jurisdiction to review such decisions, ORS 197.825(1), and that LUBA may consider constitutional questions in exercising its review authority. ORS 197.835(8)(a)(E). It is also clear that the cited provisions of the federal and state constitutions forbid public takings of private property without just compensation. It is far from clear, however, that the land use decision, which was the nominal subject of petitioner's appeal to LUBA, was its real subject. The issue petitioner raised and LUBA decided was whether there was a taking. Petitioner ascribed the purported taking to a combination of factors, and the challenged ordinances were not claimed to be

---

[1] We note that the negotiations were abortive. Petitioner also makes one assignment that does not pertain to the taking contention. That assignment is unmeritorious and does not call for discussion.

independently conclusive or even the most significant of the factors involved. LUBA observed in a footnote to its opinion:

"* * * While we agree we have no authority, in a case of this kind, to assess a dollar loss suffered by a land owner should we find a taking to have occurred, we believe we do have authority to decide whether there has or has not been a taking. The legislature did not limit our review of the kind of challenge to a local land use decision, but gave LUBA the broad power to review any claim that a decision is 'unconstitutional.' ORS 197.835[8](a)(E)."

Although LUBA's observation would be correct, given its assumption that the subject of petitioner's appeal was a land use decision, the critical question is whether that assumption is correct. The parties' arguments and LUBA's decision are not confined to the two ordinances from which petitioner ostensibly appealed. They discuss the entire course of dealing between the city and petitioner, including the earlier regulatory and enforcement activities and the deliberations concerning the city's acquisition of the property. In other words, the parties and LUBA treated the matter as the equivalent of an inverse condemnation action—albeit one in which the remedies available in such an action could not be accorded—rather than a review of two specific ordinances.

We do not fault LUBA's analytical approach. Petitioner's taking claim *could not* be decided on the basis of the ordinances alone because, under the case law as applied to the facts here, the ordinances could not have given rise to a taking independently of the city's other actions with respect to the property. Moreover, these facts are not unique in that respect. In *Suess Builders v. City of Beaverton, supra,* the court distinguished between "[r]egulation in pursuit of a public policy [which] is not equivalent to taking for a public use" and a "governmental plan to acquire private land for public ownership" in which regulation plays the subservient role of making "the property unusable for anything other than the indicated public taking." 294 Or at 259-60. In the latter case, regulations and actions more overtly related to public acquisition can combine to create a taking, and the essence of petitioner's argument is that that happened here. The essence of LUBA's reasoning is that that is not what happened here.

However, the correctness of LUBA's analytical

approach to the problem reveals why LUBA erred in assuming jurisdiction over it: if no taking could arise from the ordinances independently of the historical events which preceded their adoption,[2] the ordinances were not the real focus of LUBA's review. What LUBA was called upon to review, and did review, was a sequence of events dating from 1970. Some of the events LUBA considered were land use decisions which petitioner did not and could not challenge in this appeal; others, such as the unproductive negotiations concerning the purchase of the property, were not land use decisions at all.

Issues of the kind petitioner raised and LUBA decided have traditionally been litigated in inverse condemnation actions. It is true that LUBA's exclusive statutory jurisdiction to review "land use decisions" was established long after the judicial inverse condemnation remedy evolved and could arguably have been intended to supplement or supersede the judicial remedy.[3] In our view, the answer to that arguable proposition turns on whether the actual subject of a taking claim is the consequence of, and the underlying pattern of governmental activity which assertedly results in, a deprivation of property rights or can be restricted to a particular part of that activity which happens to come within the statutory definition of a "land use decision." The fact that a land use decision is somehow involved in a protracted and multifaceted governmental action, the ultimate effects of which go beyond mere land use regulation, cannot mean that all possible ramifications of the action fall exclusively within LUBA's realm of review. We have said before in a different context that we thought the legislature's intent in creating the land use regulatory system and agencies was that they "be part of the state government, not [that they] be the state government." *Housing Council v. City of Lake Oswego,* 48 Or App 525,

---

[2] We do not suggest, nor did the court suggest in *Suess Builders,* that a regulation alone can *never* effect a taking. However, the ordinances here could not arguably have done so. They did not deprive petitioner of all economically feasible uses of the property, *Fifth Avenue Corp. v. Washington County, supra,* 282 Or at 614, nor could they qualify as a taking under the other tests set forth in *Fifth Avenue* and *Suess Builders* except to the extent that they were adjuncts of the other events LUBA considered.

[3] The relevant events in *Suess Builders* and *Fifth Avenue,* which were inverse condemnation actions, occurred before LUBA was created; however, the Supreme Court's decision in *Suess Builders* was issued after LUBA's creation and does not refer to LUBA's existence.

538, 617 P2d 655 (1980), *rev dismissed* 291 Or 878, 635 P2d 647 (1981).

■ We regard it as unlikely to the point of being impossible that, in creating LUBA and defining its jurisdiction, the legislature intended to give LUBA review authority over the panoply of matters that have historically been resolved through inverse condemnation actions, simply because "land use decisions" may have some bearing on some of those matters. The first basis for our conclusion is that LUBA can provide *no meaningful* remedy for a taking. It cannot award damages. LUBA's orders are judicially enforceable, ORS 197.825(4)(b), but it is difficult to imagine what enforcement proceedings could ensue from a decision by LUBA that there has been a taking. In this case, for example, there is no contention that the city may not *ultimately* take and use petitioner's property as a park. If LUBA had concluded that the events to date amount to a taking, the city's options with respect to the property would be very much what they were before LUBA's decision: it could purchase the property, or condemn it, or do nothing except await an action for damages by petitioner.

Because the challenged ordinances in themselves did not cause the taking, they would remain in place; and any past history of bad faith negotiations would remain water over the dam. The only subsequent judicial proceedings that would be available to the parties would be very similar if not identical to a direct condemnation or an inverse condemnation action, and such an action or the standard precursors to it would be necessary for the city to obtain the property or for petitioner to recover compensation. We do not think the legislature meant to require a superfluous sidetrip to LUBA on the way to the courthouse. For similar reasons, we do not think that the legislature intended to substitute LUBA for the courts in cases where land use regulations allegedly give rise to takings. To conclude otherwise would be to ascribe an intent to the legislature to eliminate an adequate existing remedy and replace it with an illusory one.

We hold that, although some of the events which contribute to a taking may come within the definition of a "land use decision," the governmental action which is really at issue when a taking claim is asserted is not that kind of

component decision. It is the purported taking itself, and the courts rather than LUBA are the forum for its redress.

In *Forman v. Clatsop County,* 297 Or 129, 681 P2d 786 (1984), the court held that questions of vested rights and nonconforming uses, which were formerly triable in the courts, now come within LUBA's exclusive jurisdiction to review land use decisions. *Forman* is distinguishable, and our conclusion here is not inconsistent with it. A local determination concerning a claimed vested right is a *single* decision concerning the use of land, and LUBA's review of the decision can readily result in an answer on which complete relief can be based; conversely, a taking can seldom arise out of a single decision pertaining to the regulation of land and, on the rare occasions when it can, *see* note 2, *supra,* LUBA does not have the remedial capacity to provide relief.

LUBA did not have jurisdiction over petitioner's taking claim.

Reversed and remanded with instructions to dismiss on the taking issue; otherwise affirmed.