Argued and submitted March 4, Court of Appeals reversed and case remanded
April 14, 1987

# DUNN,
*Respondent on Review,*

*v.*

# CITY OF REDMOND,
*Petitioner on Review,*

*and*

# DESCHUTES COUNTY,
*Respondent Below.*

(LUBA No. 84-074; CA A40877; SC S33474)

735 P2d 609

Edward J. Sullivan, Portland, argued the cause for petitioner on review.

Roger L. Ellingson, Bend, argued the cause for respondent on review.

LINDE. J.

## LINDE, J.

Oregon land use law assigns the Land Use Board of Appeals (LUBA) "exclusive jurisdiction" to review a "land use decision," including review of its constitutionality. ORS 197.825, 197.835(8)(a)(E). In the present case, LUBA rejected claims of petitioner Don Dunn (respondent in this court) and an intervenor that certain ordinances adopted by the City of Redmond were invalid under the Oregon and United States Constitutions, primarily for taking their property without just compensation or depriving them of it without due process of law. Or Const, Art I, § 18; US Const, Amends 5, 14.[1] When petitioner Dunn sought judicial review, the Court of Appeals did not reach the merits but decided on its own motion that the challenged actions were beyond LUBA's jurisdiction and ordered LUBA to dismiss the proceeding. *Dunn v. City of Redmond,* 82 Or App 36, 727 P2d 145 (1986). Having allowed the city's petition for review, we reverse the decision of the Court of Appeals and remand the case for further proceedings.

The only issue now before us is LUBA's jurisdiction over Dunn's appeal. ORS 197.835(8) provides:

"In addition to the review under subsection (1) to (7) of this section, the board shall reverse or remand the land use decision under review if the board finds:

"(a) The local government or special district:

"(A) Exceeded its jurisdiction;

"(B) Failed to follow the procedures applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner;

"(C) Made a decision not supported by substantial evidence in the whole record;

---

[1] Article I, section 18 of the Oregon Constitution provides:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered; * * *."

The Fifth Amendment of the United States Constitution provides:

"No person shall * * * be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The Fourteenth Amendment of the United States Constitution provides:

"No State shall * * * deprive any person of life, liberty, or property, without due process of law; * * *."

"(D)   Improperly construed the applicable law; or

"(E)   *Made an unconstitutional decision*; or

"(b)   The state agency made a decision that violated the goals." (Emphasis added.)

The section authorizes LUBA only to "reverse or remand" an unconstitutional land use decision. The Court of Appeals correctly observed that LUBA cannot award compensation when the constitutional claim is that the challenged decision takes private property for public use without just compensation. If a landowner claims to be entitled to financial compensation for a "taking," such a claim must be pursued in a circuit court. *See, e.g., Cereghino v. State Highway Com.*, 230 Or 439, 370 P2d 694 (1962); *Tomasek v. Oregon Highway Com'n*, 196 Or 120, 248 P2d 703 (1952). This led the Court of Appeals to conclude, as one reason for its decision, that the Legislative Assembly did not mean LUBA to review a land use decision when a landowner claims that the decision is an unconstitutional "taking" of his property without just compensation. But that depends on what relief the owner seeks.

Doubtless the division of remedial authority between LUBA and the circuit courts brings with it the potential problems of any divided jurisdiction between two tribunals. An owner may be entitled to compensation when the loss of property that a court finds to be a compensable "taking" has already occurred. *Cereghino*, for instance, involved compensation for flooding of farm land as a result of a highway project; *Tomasek* involved compensation for erosion resulting from construction of a highway bridge.[2] Where an owner contends that future government actions will be a "taking" that can be pursued only upon payment of compensation, the contention is made as a basis for demanding that such actions be abandoned or enjoined. *Cf. Pennsylvania Coal Co. v. Mahon*, 260 US 393, 415-16, 43 S Ct 158, 160, 67 L Ed 2d 322 (1922)(declaring void as a "taking" an injunction restraining mining of coal under certain lands).

---

[2] *See also Thornburg v. Port of Portland*, 233 Or 178, 376 P2d 100 (1962)("nuisance" created by airplane noise compensated as a "taking" of landowner's property by airport); 47 Or L Rev 214 (1968). In these cases, compensation for "taking" provided a means of circumventing government tort immunity before enactment of the Oregon Tort Claims Act.

An owner's unilateral choice of remedy is not conclusive. Constitutional challenges to regulation of private property arise when the government has decided *not* to take the property for public use and does not intend to pay compensation. The government may be prepared to defend its regulation whether the owner sues to invalidate it or sues for compensation, but if the decision proves to be adverse, the government may prefer to modify or abandon its policy rather than buy the property. When the government has sought to regulate private property but not to take it, the owner cannot force a sale by having a court decide that the regulation is tantamount to taking the property for public use. The policy choice is for the government to make. *See Suess Builders v. City of Beaverton,* 294 Or 254, 260, 656 P2d 306 (1982).[3]

■   This court in fact has never invalidated a regulation of the private use of property under the Oregon Constitution for failure to pay compensation, although a government may have to pay if the regulation is a step in a plan to acquire the property for public use and denies the owner an economic use of the property pending its eventual acquisition. *See Suess Builders, supra,* 294 Or at 257-61; *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978).[4] It is conceivable

---

[3] There, plaintiff landowners alleged that several governmental bodies had "taken" plaintiffs' property by designating it as a future park site in the city's comprehensive land use plan. The court stated that the adoption of the comprehensive plan did not obligate the government to buy the land or allow plaintiffs to sue for the price, noting that the government could change its mind about the plan, as it eventually did. The court noted that

"the adoption of a plan could be the equivalent of taking the use of the property until the government decided to buy it or release it, if the legal effect of defendants' actions is to 'freeze' the status of the land for that purpose without any possibility of an economic use."

*Suess Builders v. City of Beaverton,* 294 Or 254, 260, 656 P2d 306 (1982).

[4] *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 614, 581 P2d 50 (1978), mentioned preclusion of "all economically feasible private uses pending eventual taking for public use" and also "such governmental intrusion as to inflict virtually irreversible damage" as conditions under which an owner might be entitled to compensation. Petitioners here included the second phrase in their claim; however, the footnote accompanying the quoted passage shows that "governmental intrusion" did not refer to regulations but to designations for actual public entry or other public uses as well as nontrespassory invasions such as the "nuisance" of airplane noise in *Thornburg v. Port of Portland, supra* n 2. *Fifth Avenue Corp., supra,* 282 Or at 614 n 17, 581 P2d 50.

A claim that the owner has been deprived of property without due process is a claim under the Fourteenth Amendment of the United States Constitution, not the Oregon Constitution.

that an owner might demand invalidation of a land use decision or compensation in the alternative, or invalidation plus compensation for an alleged "taking" during the government's aborted effort to acquire the property. But LUBA, rather than a circuit court, has jurisdiction under ORS 197.835(8), set forth above, to consider issues other than constitutional grounds raised against a land use decision. This is important because constitutional attacks against government policies should await decision of issues of ordinary law; doubtful statutes, ordinances, regulations, or orders should not needlessly be interpreted so as to be unconstitutional when there is another valid and tenable interpretation. *See Tharalson v. State Dept. of Rev.,* 281 Or 9, 13, 573 P2d 298 (1978); *Wright v. Blue Mt. Hospital Dist.,* 214 Or 141, 144, 328 P2d 314 (1958); *Peninsula Dr. Dist. No. 2 v. Portland,* 212 Or 398, 418, 320 P2d 277 (1958). *See also Meredith Corp. v. F.C.C.,* 809 F2d 863, 872 (DC Cir 1987) (Federal Communications Commission required to respond to constitutional challenge in order to "guard against premature constitutional adjudication"). We therefore do not regard it as "unlikely to the point of being impossible," *Dunn v. City of Redmond, supra,* 82 Or App at 41, that the legislature would assign to the specialized land use board review of the validity of a land use decision and leave to the courts the determination of a claim for compensation. That occurs in other areas of primary agency jurisdiction,[5] and it seems to be exactly what the legislature did here.

---

[5] For instance, review of public employment decisions may be assigned to a specialized board, precluding reversal by a trial court except on limited grounds, while only a court and not the board may have authority to award damages for any tort allegedly committed in the course of the employment dispute. ORS 240.086 assigns to the Employment Relations Board (ERB) the duty to "review and enforce" arbitration awards involving state employees in collective bargaining units and the duty to "review any personnel actions" affecting state employees not·in collective bargaining units. Judicial review of ERB decisions is under the administrative procedure act, ORS 183.325 to 183.550. Similarly, ORS 342.905 assigns to the Fair Dismissal Appeals Board review of dismissals of permanent teachers but not of other claims that may arise out of the same circumstances. *Cf. Maddox v. Clac. Co. Sch. Dist. No. 25,* 293 Or 27, 30-34, 643 P2d 1253 (1982) (rejecting probationary teacher's damage action for early termination of employment contract because contract limited remedies to statutory termination procedures).

The Legislative Assembly has considered legislation that would facilitate the transfer of cases reviewing governmental acts between tribunals. *See* HB 2306, § 6, 64th Oregon Leg, Reg Sess (1987); *see also* Safriet, *Judicial Review of Government Action: Procedural Quandaries and a Plea for Legislative Reform,* 15 Envtl L 217, 222-33 (1985)(discussing proposed transfer provisions).

The second reason cited by the Court of Appeals for denying LUBA's jurisdiction in this case is that the landowner's claim of an unconstitutional "taking" involved other governmental actions besides the land use decisions that he appealed to LUBA.

A "land use decision" within the exclusive jurisdiction of LUBA includes a "final decision or determination made by a local government * * * that concerns the adoption, amendment or application" of the state's land use goals, a comprehensive plan provision, or a land use regulation. ORS 197.015(10)(a)(A). "Land use regulation" includes planning and zoning ordinances. ORS 197.015(11). The owner's petition for review to LUBA attacked two ordinances adopted by the city, zoning ordinance 595 and planning ordinance 596, on several grounds, including an assertion that the ordinances violated Article I, section 18, of the Oregon Constitution and the Fifth and Fourteenth Amendments of the federal constitution by taking private property for public use without just compensation. On its face, therefore, the owner's petition appears correctly to invoke LUBA's jurisdiction.

The petition further requested an evidentiary hearing, authorized by ORS 197.830(11), to determine facts relevant to the allegation that the ordinances "as adopted" violated the Oregon and federal constitutions "and should be declared void." LUBA granted the motion and obtained a "prehearing order" from the parties that set forth agreed and disputed facts and the parties' evidence in the form of depositions and exhibits. The ordinances designated the land as "Open Space Park Reserve," allowing only limited and conditional uses. The additional facts concerned the economic feasibility of these uses and prior dealings between the owner and the city that were said to show the city's intention to acquire the property and to foreclose any alternative development. Upon this record LUBA rejected all challenges to the validity of the ordinances.

The Court of Appeals stated the following reason why it thought the challenges were beyond LUBA's jurisdiction:

"* * * [I]f no taking could arise from the ordinances independently of the historical events which preceded their adoption, the ordinances were not the real focus of LUBA's review. What LUBA was called upon to review, and did review, was a

sequence of events dating from 1970. Some of the events LUBA considered were land use decisions which petitioner did not and could not challenge in this appeal; others, such as the unproductive negotiations concerning the purchase of the property, were not land use decisions at all." (Footnote omitted.)

82 Or App at 40. The Court of Appeals continued that

"[b]ecause the challenged ordinances in themselves did not cause the taking, they would remain in place; and any past history of bad faith negotiations would remain water over the dam."

*Id.* at 41. The court concluded:

"We hold that, although some of the events which contribute to a taking may come within the definition of a 'land use decision,' the governmental action which is really at issue when a taking claim is asserted is not that kind of component decision. It is the purported taking itself, and the courts rather than LUBA are the forum for its redress."

*Id.* at 41-42.

In other words, the court held that LUBA loses jurisdiction whenever "a taking claim is asserted," even if the petition asserts that claim in an effort to invalidate a land use decision rather than to obtain compensation. That is erroneous.

■ The petition in this case requested LUBA to review and invalidate the city's ordinances 595 and 596, which unquestionably were land use regulations and therefore land use decisions. The owner did not seek to force a sale to the city or compensation for any "taking" that the city might have committed in its alleged "bad faith negotiations" in order to reduce the price at which it might eventually buy or condemn the property. The Court of Appeals stated that "no taking could arise from the ordinances independently of the historical events which preceded their adoption," 82 Or App at 40, but it equally can be said that the preceding events could not or did not constitute a taking without the ordinances that limited the owner's use of his property. In any event, the ordinances were the target of the owner's petition to LUBA. ORS 197.825 (defining LUBA's jurisdiction) and 197.835 (limiting LUBA's scope of review) do not require the opposing

parties to dispute and LUBA to sort out the relative magnitude of various "factors" asserted in attacking a land use decision in order to determine that LUBA has jurisdiction to consider the attack.

In sum, if an owner seeks to have a land use decision set aside on constitutional grounds, the owner must take that appeal to LUBA. An owner who maintains that the government's acts entitle him to compensation may seek compensation in circuit court. If the owner seeks invalidation of the land use decision or compensation in the alternative, or both, and the government defends the validity of its regulatory decision and denies that compensation is due, the court may have to withhold judgment until the legality of the land use decision is placed before and decided by LUBA and the government has had an opportunity to reconsider and modify its decision. The special provision for taking evidence beyond the record made before the local government, ORS 197.830(11), as was done here, shows that a full LUBA review of whatever may bear on the constitutionality of a land use decision was not beyond legislative contemplation. Allegations of a "taking" are too easily made in land use cases, however tenuous they may be on the merits, to take such cases out of LUBA's "exclusive jurisdiction."

The decision of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings.