Submitted on remand from the Oregon Supreme Court May 13, affirmed July 8, 1987

# DUNN,
*Petitioner,*

*v.*

# CITY OF REDMOND,
*Respondent,*

*and*

# DESCHUTES COUNTY,
*Respondent Below.*

(LUBA 84-074; CA A40877)

739 P2d 55

Roger L. Ellingson, Bend, appeared for petitioner.

Edward J. Sullivan and Sullivan, Sherton, Pfeiffer, Johnson & Kloos, Portland, appeared for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

This case is before us on remand from the Supreme Court. *Dunn v. City of Redmond,* 303 Or 201, 735 P2d 609 (1987). We described the factual background and the issues in our earlier opinion, 82 Or App 36, 38, 727 P2d 145 (1986):

"Petitioner seeks review of LUBA's affirmance in his appeal from two ordinances of the city of Redmond. The ordinances, enacted in 1985, designated petitioner's property as open space park reserve and required that it be preserved for future use as a public park. Although residential use is not permitted outright by the ordinances, they allow the existing residential use on petitioner's property to continue as 'non-conforming' until the property is 'acquired by public agency for park uses.' The ordinances also establish a number of conditional uses, none of which petitioner had applied for as of the time when he appealed to LUBA. Petitioner's principal contention before LUBA and us is that the 1985 ordinances, together with the city's prior regulatory and enforcement activities and its purportedly bad faith negotiations and other efforts directed at acquisition of the property, constitute a taking in violation of the Fifth Amendment to the United States Constitution and Article I, section 18 of the Oregon Constitution. LUBA concluded that there was no taking under the tests formulated in *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978), and *Suess Builders v. City of Beaverton,* 294 Or 254, 656 P2d 306 (1982)." (Footnote omitted.)

We held that LUBA lacked jurisdiction to consider the federal and state constitutional taking issues. The Supreme Court disagreed and remanded for us to address the merits of petitioner's assignments.[1]

---

[1] We assume the reader's familiarity with the Supreme Court's opinion and our previous one.

Since those opinions were announced, the United States Supreme Court held in *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 US ___, 107 S Ct 2378, 96 L Ed 2d 250 (1987), that the Just Compensation Clause of the Fifth Amendment requires that the states provide a remedy by which damages can be recovered for regulatory takings. The Court rejected the California Supreme Court's earlier holding in *Agins v. City of Tiburon,* 24 Cal 3d 266, 157 Cal Rptr 372, 598 P2d 25 (1979), *aff'd on other grounds* 447 US 255, 100 S Ct 2138, 65 L Ed 2d 106 (1980), that a landowner could not maintain an inverse condemnation action to recover damages for a regulatory taking before having sought non-monetary mandamus or declaratory relief and could become entitled to compensation only after and for the period after the government's election to continue any regulation which a court held to be "excessive." The United States Supreme Court reasoned that the constitutional right to compensa-

It is clear that the two challenged ordinances, *in themselves,* do not give rise to a taking of petitioner's property. *See Dunn v. City of Redmond, supra,* 82 Or App at 40, n 2. They only regulate the property's present and eventual use, *see Suess Builders v. City of Beaverton,* 294 Or 254, 259, 656 P2d 306 (1982), and they allow petitioner's residential use of his property to continue pending its public acquisition. They also provide for conditional uses. The ordinances do not have the facial effect of precluding petititioner "from all feasible private use of the property pending its eventual acquisition." *Suess Builders v. City of Beaverton, supra,* 294 Or at 261. Moreover, he has not exhausted available remedies, *e.g.,* by applying for a conditional use permit. His contrary arguments "simply rest on the apparent preclusive effect" of the ordinances; the Supreme Court said in *Suess Builders* that doing so was not an adequate alternative to pursuing and exhausting remedies. 294 Or at 261.

Petitioner's principal arguments are not directed against the ordinances *per se,* but attempt to demonstrate that the ordinances are the capstone of a history of city regulation and bad faith negotiations to acquire the property. Petitioner suggests that the combination of the ordinances and the other city actions "froze" the "status of the land [pending its eventual public acquisition] without any possibility of an economic use." *Suess Builders v. City of Beaverton, supra,* 294 Or at 260. It is not totally clear to us from the Supreme Court's opinion on review whether LUBA properly did, or we now may, look behind the ordinances to the earlier events which petitioner contends conjoined with the ordinances to cause a taking. In the interest of avoiding further attempts at clarification on the Supreme Court's part, we will assume that the answer is yes. However, what lies behind the ordinances does not greatly

---

tion encompasses the owner's loss of use of land from the inception of the regulation which causes the loss and applies to temporary as well as to permanent takings.

*First English Evangelical* is consistent with the Oregon Supreme Court's opinion in this case if, as we understand the latter, a landowner has the choice either to bring an inverse condemnation action in the first instance or to seek non-monetary relief in LUBA rather than or before pursuing the judicial remedy. *See* 303 Or at 209. *First English Evangelical* states no new standards about when governmental regulations give rise to takings subject to federal constitutional redress. The appeal was from a ruling on the pleadings by the state court, and the Supreme Court therefore took as true the allegation that the regulation deprived the owner of all use of the property.

assist petitioner. They are the culmination of the earlier regulatory enactments and procedures, as petitioner contends; but, like the ordinances, those historical actions were aimed at preserving the property for eventual park use. The regulatory history is simply redundant of the present regulation, and it adds nothing to petitioner's claim that the ordinances themselves prevent economic use of the land.

Petitioner's contentions concerning the city's efforts to acquire his property posit that, both independently of the ordinances and in conjunction with them and the earlier regulations, the bad faith negotiations and other acquisition-related actions of the city resulted in a taking. In our view, both facets of the argument are defeated by LUBA's finding:

> "What emerges is that there were on-again off-again negotiations to purchase the Dunn property. The negotiations broke down. It is apparent that the city did not wish to pay as much as the Dunns wished to receive for the property. This fact alone, and in concert with the others relied upon by petitioners, does not show a course of conduct depriving petitioners of all feasible use of their property."

Regulations of land which do not otherwise constitute a taking cannot be converted into a taking by the mere fact that they are accompanied by the failure of the government and the owner to reach agreement on a purchase price.[2]

We reject peititoner's arguments concerning the taking issue. He makes one assignment concerning a different matter, which we rejected in our previous opinion, 82 Or App at 38, n 1, and which the Supreme Court did not address on review.

Affirmed.

---

[2] Petitioner's related argument that the city's adoption of an ordinance directing its staff to purchase the property "places a cloud of condemnation over" it merits no comment.