**Thomas DODD; Doris Dodd,**
**Plaintiffs–Appellants,**

v.

**HOOD RIVER COUNTY,**
**Defendant–Appellee,**

and

**State of Oregon, Defendant–**
**Intervenor–Appellee.**

No. 97–35124.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1998.

Decided Feb. 13, 1998.

---

John M. Groen, Pacific Legal Foundation, Bellevue, Washington, for plaintiffs-appellants.

Lisa E. Lear, Bullivant, Houser, Bailey, Pendergrass & Hoffman, P.C., Portland, Oregon, for defendant-appellee.

Stephanie L. Striffler, Special Counsel to the Attorney General of Oregon, Salem, Oregon, for defendant-intervenor-appellee.

Before: ALDISERT,* PREGERSON and TROTT, Circuit Judges.

ALDISERT, Circuit Judge:

This latest chapter of the long-running state and federal judicial saga in the zoning

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

controversy between Thomas and Doris Dodd on one side and Hood River County and the State of Oregon on the other requires us to decide whether the Dodds are entitled to compensation under the Fifth Amendment's Takings Clause that was denied them in previous state court and agency proceedings involving takings under Article I, section 18 of the Oregon Constitution. The district court denied them relief. We affirm the judgment of the district court, albeit for different reasons.

In reaching this decision we hold that the district court did not err in applying the doctrine of issue preclusion against the Dodds in the federal proceeding because they had not been totally deprived of some substantial beneficial use of their property, as adjudicated in the state administrative and judicial proceedings.

This case has a long history, the facts of which are set out in our previous opinion in *Dodd v. Hood River County,* 59 F.3d 852, 855–857 (9th Cir.1995) *(Dodd IV ).* We will summarize them here.

### I.

In November 1983, the Dodds purchased a 40–acre parcel in a Forest Use Zone in Hood River County, intending to build their retirement home. *Dodd v. Hood River County,* 22 Or. LUBA 711, 714–715 (1992) *(Dodd I )* (the Oregon Land Use Board of Appeals, or "LUBA," proceeding). At the time of the purchase, Oregon state law permitted dwellings to be built in Forest Use Zones only if "necessary and accessory" to forest use. *See* State Land Conservation & Dev. Comm'n Goal 4, Or. Admin. R. 660–15–000(4); *Lamb v. Lane County,* 7 Or. LUBA 137, 143 (1983) (interpreting and setting standard for compliance with Goal 4). State law also required county zoning ordinances to comply with Goal 4. Or.Rev.Stat. §§ 197.175, 197.250; *see also Alexanderson v. Board of Comm'rs,* 289 Or. 427, 434–435, 616 P.2d 459 (1980). Hood River County's zoning ordinances, however, were not yet compatible with Goal 4 at the time of the Dodds' purchase. But for the prohibitions set forth in the Oregon statute, the Dodds may have been able to build a residence under the County's zoning scheme, as it was worded.

At about the time of the purchase, the Dodds received several notices from the County which they interpreted as authorization for them to build a residence. Months before the purchase, the County Sanitarian prepared a report for the previous owner stating that the parcel was suitable for a septic system. In January 1984, an employee of the County Planning Department signed a "Land Use Compatibility Statement" stating that a residence on the parcel would be compatible with statewide planning goals. In February 1984, the Sanitarian sent the Dodds a letter stating that their plans to build a residence "would appear to leave opportunity for the water supply system to be developed." However, none of these notices stated that the permits necessary for the Dodds to build their residence would be issued; the Sanitarian's first letter expressly stated that it was not to be considered such a representation.

During the same time period, the County sent notice to the Dodds' predecessor-in-interest, and published other notices, stating that its zoning ordinances were in the process of being amended to comply with Goal 4. In February 1984, the County passed an ordinance changing the zoning of forest land, but fearing that this still did not comply with Goal 4, passed another ordinance in December 1984 which adopted the "necessary and accessory" test for the building of residences in Forest Use Zones.

In 1990, the Dodds applied to the County Planning Department for a land use permit, a conditional use permit and a comprehensive plan and zone change that would allow them to build a residence on the parcel. All were denied. In an appeal to the County Planning Commission in April 1991, two public hearings were held before the Commission upheld the Department's decision. The Dodds appealed to the Board of County Commissioners, which also held a public hearing before upholding the decision.

The Dodds then appealed to LUBA, arguing that the denial was a taking under Article I, section 18 of the Oregon Constitution. LUBA also affirmed. LUBA considered a

written appraisal of the parcel submitted by the Dodds, which estimated the value of the parcel without the benefit of the Dodds' proposed residence, adding the value of the timber currently available on the land to the value of the land suitable for future timber growing, to be $691.81. The County also submitted a letter from its Forester, who declared that the Dodds, after subtracting expenses, could yield at least $10,000 from harvesting the timber. LUBA found that the Dodds' proposed residence was not "necessary and accessory" to forest use. It also found that there was no taking under the Oregon Constitution because the land could "produce a net profit if properly managed for timber production", and thus the Dodds were not denied a "substantial beneficial use of the property." *Dodd I*, 22 Or. LUBA at 732.

The Oregon Court of Appeals, *Dodd v. Hood River County*, 115 Or.App. 139, 836 P.2d 1373 (1992) (*Dodd II* ), and Oregon Supreme Court, *Dodd v. Hood River County*, 317 Or. 172, 855 P.2d 608 (1993) (*Dodd III* ), each affirmed the decision. The Oregon Supreme Court determined that the record supported the Dodds' potential profit from forest use of the land and denied relief under the Oregon Constitution. *Dodd III*, 317 Or. at 180, 185, 855 P.2d 608. Because the Dodds expressly reserved their takings claim under the Fifth Amendment, the federal issue was not presented in the Oregon administrative and judicial proceedings.

Before the Oregon Supreme Court had decided the case, the Dodds filed suit under 42 U.S.C. § 1983 in federal district court, before which the Dodds made their taking argument under the Fifth and Fourteenth Amendments of the United States Constitution. The district court dismissed the claim as unripe. The Dodds appealed and, because the Oregon Supreme Court decided the case during the pendency of the appeal, we decided that the federal issue was ripe and remanded. *Dodd IV*, 59 F.3d at 865.

On remand, the district court had to determine, *inter alia*, whether the Dodds' claim under the Takings Clause of the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, requires a broader inquiry than a claim under the Takings Clause of the Oregon Constitution. This was to be a threshold decision by the district court before it could determine whether the Oregon state agency determination under the Oregon Constitution precluded the Dodds from proceeding under the Fifth Amendment to the United States Constitution. The district court determined that there was no fundamental distinction between the takings analysis under the two constitutions and, therefore, that the Dodds were precluded from obtaining federal court relief.

## II.

■ We review the district court's grant of summary judgment de novo. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997). We must determine, viewing the evidence in the light most favorable to the Dodds, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See id.*

## III.

■ At issue here is a concept that is traditionally known as and is still most frequently called "collateral estoppel" by the courts. *See* 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4402 (1981). The terms "issue preclusion" and "collateral estoppel" have been used interchangeably by both the parties and the courts in this case. However, we have previously expressed our preference for the term "issue preclusion" and will here refer to the concept by this term. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 n. 2 (9th Cir.1988).

■ Under the doctrine of issue preclusion, a valid and final determination in one proceeding of a necessary factual or legal issue-here the value of the Dodds' land-may not be relitigated in a subsequent proceeding involving a party to the prior action. *See Fisher Broad. v. Department of Revenue*, 321 Or. 341, 347, 898 P.2d 1333 (1995). This judicially-created doctrine, as with res judicata, serves to promote judicial efficiency by preventing multiple lawsuits and to enable

the parties to rely on the finality of adjudications. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980). Federal courts must give state court judgments the same preclusive effect as they would be given by courts of that state. Full Faith and Credit Act, 28 U.S.C. § 1738; *Parsons Steel v. First Ala. Bank,* 474 U.S. 518, 525, 106 S.Ct. 768, 772–73, 88 L.Ed.2d 877 (1986). Therefore, Oregon law dictates our analysis of issue preclusion. *See Allen,* 449 U.S. at 96, 101 S.Ct. at 415–16.

■ Under Oregon law, LUBA's determination that the Dodds were not "denied a 'substantial beneficial use of [their] property'", *Dodd I,* 22 Or. LUBA at 732, will be given preclusive effect in a subsequent proceeding if five requirements are met:

1. The issue in the two proceedings is identical.

2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

3. The [Dodds] had a full and fair opportunity to be heard on that issue.

4. The [Dodds were parties in] or w[ere] in privity with a party to the prior proceeding.

5. The prior proceeding was the type of proceeding to which [Oregon courts] will give preclusive effect.

*See Nelson v. Emerald People's Util. Dist.,* 318 Or. 99, 104, 862 P.2d 1293 (1994) (citations omitted). The Dodds were, of course, parties before LUBA, but they contest all other factors.

### 1.

■ In deciding that the Dodds' property was not "taken" under Article I, section 18 of the Oregon Constitution, LUBA framed its analysis by the following test: "Where a [land use regulation] allows a landowner some substantial beneficial use of his property, the landowner is not deprived of his property nor is his property 'taken.'" *Dodd I,* 22 Or. LUBA at 728 (quoting *Fifth Ave. Corp. v. Washington Co.,* 282 Or. 591, 609, 581 P.2d 50 (1978)). In comparison, a takings analysis under the Fifth and Fourteenth Amendments to the United States Constitution in-

volves, as one factor, determining whether a land owner has been deprived of "economically beneficial uses" of his property. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019, 112 S.Ct. 2886, 2895, 120 L.Ed.2d 798 (1992). For purposes of issue preclusion, this single issue is identical because the "question expressly and definitely presented in this suit is the same as that definitely and actually litigated and adjudged" before LUBA. *See Montana v. United States,* 440 U.S. 147, 157, 99 S.Ct. 970, 975, 59 L.Ed.2d 210 (1979) (citation omitted).

■ Under Oregon law, issues are not identical for preclusion when "the underlying facts relevant to the determination of [the issue] are not the same." *Fisher,* 321 Or. at 347, 898 P.2d 1333. As the district court described the federal and state takings analyses, "[f]or either test, the underlying factual issue is identical: what is the value of the property after the regulation is in place?" LUBA considered each party's appraisal and concluded that the Dodds could "produce a net profit" from the land. *Dodd I,* 22 Or. LUBA at 732.

■ The federal takings analysis of "economically viable use" comports with LUBA's analysis: "The existence of permissible uses determines whether a development restriction denies a property owner economically viable use of his property." *See Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 95 F.3d 1422, 1432 (9th Cir.1996), *aff'd on reh'g,* 127 F.3d 1149 (9th Cir.1997). LUBA's decision that the Dodds could profit from the land notwithstanding the use restriction thus satisfies the "identical issue" prong of issue preclusion.

### 2.

■ A prior proceeding will preclude reconsideration of an issue "only as to those matters in issue or points controverted, upon determination of which the finding or verdict was rendered." *Sea–Land Serv. v. Gaudet,* 414 U.S. 573, 593, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 (1974); *see also McCall v. Dynic USA Corp.,* 138 Or.App. 1, 7, 906 P.2d 295 (1995) (issue "actually litigated" when, "because of the way plaintiff framed the issues

in the [previous action before Workers' Compensation Board,] the Board necessarily had to decide" the same issue presented in later action). It is sufficient for the "actually litigated" prong that LUBA expressly considered the Dodds' evidence presented on the alleged $691.81 value of the parcel, found the evidence to be unpersuasive and based its conclusion that there was no taking on that finding. *Dodd I*, 22 Or. LUBA at 732; *see also State Farm Fire & Cas. Co. v. Sallak*, 140 Or.App. 89, 94, 914 P.2d 697 (1996) (guilty plea to criminal charge is "actually litigated" for preclusive effect because court accepting plea must ensure that plea is founded on fact). Thus, the issue was actually litigated and essential to LUBA's decision.

### 3.

■■■■ A full and fair opportunity to be heard is provided at an administrative adjudication such as the Dodds' proceeding before LUBA "if the parties had both a full opportunity and the incentive to contest the point at issue on a record that also was subject to judicial review." *See Chavez v. Boise Cascade Corp.*, 307 Or. 632, 635, 772 P.2d 409 (1989). The Dodds argue that they had no incentive to litigate the issue of the parcel's remaining value because "both parties and LUBA were well aware that the Dodds had filed their federal constitutional claim in federal court and had expressly reserved the right to litigate the claim in that forum." The fallacy of irrelevance, or *ignoratio elenchi*, abounds in the Dodds' argument. That the Dodds had no incentive to litigate the federal claim is irrelevant to the question of their incentive to litigate the actual issue involved-the value of their land-in the state takings claim being adjudicated at the time. The incentive for the Dodds to litigate the issue before LUBA was great: Were they to succeed, LUBA had the express authority to grant them relief under the Oregon Constitution. Or.Rev.Stat. § 197.835(9)(a)(E); *see Dunn v. City of Redmond*, 303 Or. 201, 209, 735 P.2d 609 (1987).

■■■ The Dodds argue that LUBA did not afford them a full and fair opportunity to be heard because its procedures were not as formal as those found in court proceedings. Specifically, at its hearing LUBA considered as evidence written documents that were not sworn testimony, and no witnesses were cross-examined. Under Oregon law, however, the Dodds could have requested a full evidentiary hearing before LUBA, which would have given them all of the procedures they claim were erroneously lacking in their own hearing. *See* Or.Rev.Stat. § 197.835. Had the Dodds asked for and utilized these procedures, there is no doubt that they would have received a full and fair opportunity to litigate. *See Hickey v. Settlemier*, 116 Or. App. 436, 439, 841 P.2d 675 (full and fair opportunity to litigate when plaintiff was represented by counsel and allowed to cross-examine witnesses, a transcript was provided, there was a neutral factfinder and the decision was subject to judicial review), *rev'd on other grounds*, 318 Or. 196, 864 P.2d 372 (1993). But the Dodds did not ask for the evidentiary hearing. We must decide, therefore, if the availability of these procedures was enough to satisfy this prong of the issue preclusion doctrine. We conclude that it was.

The Dodds argue that a "full and fair opportunity" to be heard should mean "full and fair utilization" of due process procedures:

> [T]hus, when governmental agencies adjudicate or make binding determinations which directly affect legal rights of individuals, it is imperative that those agencies use procedures which have traditionally been associated with judicial process.

*Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960). In that case, the Court held that the Civil Rights Commission, in conducting only investigative proceedings, did not need to satisfy the same due process requirements to which adjudicative bodies must adhere. *Id.* at 451, 80 S.Ct. at 1519. In *Hannah*, the Court did not address the distinction between the availability and utilization of such procedures, but it did so in *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 483, 102 S.Ct. 1883, 1898–99, 72 L.Ed.2d 262 (1982), in which the Court found that New York law provided a person who alleged employment discrimination with procedures that satisfied due process; New

York law included, in part, the "opportunity" for the claimant to present his case before a state agency that considered exhibits and witness testimony. The Court specifically stated that the "fact that [the claimant] failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy." *Id.* at 485, 102 S.Ct. at 1899. The Court then gave res judicata effect to the state agency decision on the discrimination claim. *Id.*

Similarly, the Dodds' own failure to request a full evidentiary hearing before LUBA should not enable them to avoid the operation of the issue preclusion doctrine now. Otherwise, parties who desire to pursue actions in a different forum could do so without fearing the effects of issue preclusion by merely failing to pursue a claim by all procedures available to them in the first forum. The Dodds were given a sufficient opportunity to be heard on the land value issue.

### 4.

■ For issue preclusion to apply against the Dodds, the LUBA proceeding must be the "type of proceeding" to which the state courts of Oregon would give preclusive effect. *See Nelson,* 318 Or. at 104, 862 P.2d 1293. Oregon courts have denied preclusive effect only to administrative proceedings that lacked certain safeguards. *See, e.g., State v. Ratliff,* 304 Or. 254, 258–259, 744 P.2d 247 (1987) (no neutral judge and both parties not present); *Chavez,* 307 Or. at 637–638, 772 P.2d 409 (no clear record or clear findings). Safeguards were in place at the LUBA hearing, however, and there is no justification for departing from Oregon's general rule.

LUBA was required to, and did, make independent findings on a record, and gave the parties the opportunity to present additional information. Or.Rev.Stat. § 197.835(2); Or. Admin. R. 661–10–025, 026. The parties submitted briefs and made oral arguments. Or. Admin. R. 661–10–030, 039, 040. LUBA afforded the Dodds the opportunity to have an evidentiary hearing, at which they could have subpoenaed and cross-examined witnesses, and its decision was subject to judicial review. Or.Rev.Stat. § 197.850;

Or. Admin. R. 661–10–045. Moreover, the Oregon Court of Appeals has given a LUBA decision preclusive effect under the related doctrine of res judicata. *Springer v. City of Bend,* 111 Or.App. 136, 139, 826 P.2d 1 (1992).

The substantial procedures available to the Dodds before LUBA in litigating the issue of the value of their land, as well as the review by the Oregon courts, demonstrate that it was fair and efficient for the district court to decide the Dodds are precluded from relitigating the issue. *See Drews v. EBI Cos.,* 310 Or. 134, 141, 795 P.2d 531 (1990).

### 5.

■ Nor does the Dodds' previous reservation of this federal takings claim under the doctrine of *England v. Louisiana State Bd. of Med. Exam'rs,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *United Parcel Serv. v. California Pub. Util. Comm'n,* 77 F.3d 1178, 1183 (9th Cir.1996), prevent operation of the issue preclusion doctrine. Because the Dodds were effectively able to reserve their claim for federal court, *Dodd IV,* 59 F.3d at 862, the reservation doctrine does not enable them to avoid preclusion of issues actually litigated in the state forum. *See Temple of the Lost Sheep v. Abrams,* 930 F.2d 178, 181–183 (2d Cir.1991) (citing *Beltran v. State of California,* 871 F.2d 777, 783 n. 8 (9th Cir. 1988)); *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064 (3d Cir.1990).

We have previously applied issue preclusion where both parties to a state court proceeding implicitly acquiesced to the splitting of a civil rights claim in a concurrent federal court proceeding. *See Clements v. Airport Auth.,* 69 F.3d 321, 330 (9th Cir. 1995). This case is similar. Here, the Dodds explicitly asked the Oregon courts to refrain from addressing the takings issue under the federal constitution so the Dodds could argue that claim in a federal forum. To the extent that they fully litigated a necessary issue in the course of the state proceedings that is identical to an issue before the federal court, the Dodds are precluded from taking a second bite of the apple. The teachings of the Supreme Court are instructive in this regard:

There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.

*Allen*, 449 U.S. at 104, 101 S.Ct. at 420. The district court correctly applied issue preclusion against the Dodds.

## IV.

The district court held that, because the Dodds had some value remaining in their land through forest use, they could not suffer a regulatory taking as a matter of federal law. However, we had instructed the district court to decide on remand "whether a factual predicate is necessary" to distinguish between a takings analysis under the Oregon and United States Constitutions. *Dodd IV,* 59 F.3d at 863. We drew attention to the Oregon Supreme Court's suggestion in this case that the "investment-backed expectations" factor was not part of the state analysis but was part of a federal takings analysis. Remand was necessary "because the development of a factual record may be necessary to illustrate the resemblances and the distinctions between claims brought under the Oregon and federal constitutions." *Id.*

In *Lucas,* the Supreme Court held that there is a categorical taking when a regulation prohibits all economically beneficial use of land, and no balancing of the other factors commonly analyzed in takings law-reasonable investment-backed expectations and legitimate government interests-would be necessary. 505 U.S. at 1015, 112 S.Ct. at 2892–93. This all-or-nothing economics test was the test applied by the Oregon Supreme Court in this case to decide the takings issue under the Oregon Constitution. *Dodd III;* 317 Or. at 181, 855 P.2d 608 (noting that the tests under the state and federal constitutions "are not necessarily identical," but for purposes of the Oregon takings analysis, because the Dodds were still allowed "some substantial beneficial use" of their land, there could be no taking under state law).

However, when a government regulation prohibits something less than all economically beneficial use and causes at most a partial loss in economic use, the fact that there has been no categorical taking does not end the analysis under federal law. The Supreme Court has stated:

> In engaging in these essentially ad hoc, factual inquiries, the Court's decisions have identified several factors that have particular significance. The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations. So, too, is the character of the governmental action.

*Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978) (citations omitted). When something less than "all" economically viable use has been destroyed, the oft-quoted test for determining whether the government has taken property through regulation in violation of the Fifth Amendment is that a violation occurs when the regulation "does not substantially advance legitimate state interests *or* denies an owner economically viable use of his land." *Carson Harbor Village Ltd. v. City of Carson,* 37 F.3d 468, 473 (9th Cir.1994) (quoting *Lucas,* 505 U.S. at 1016, 112 S.Ct. at 2894 (citation omitted)).

This test has been restated and reapplied many times, but it is still not refined with precision. *See, e.g., Florida Rock Indus. v. United States,* 18 F.3d 1560, 1564 (Fed.Cir. 1994) (noting that the test is the "subject of on-going debate" in extensive literature). The Eleventh Circuit has interpreted the Supreme Court's takings analysis in *Nollan v. California Coastal Com'n,* 483 U.S. 825, 834, 107 S.Ct. 3141, 3147, 97 L.Ed.2d 677 (1987), as requiring first an analysis of whether a particular regulation substantially advances a legitimate state interest. *Reahard v. Lee County,* 968 F.2d 1131, 1135 (11th Cir.1992). The court went on:

> If the regulation does not substantially advance a legitimate state interest, it can be declared invalid. The second test is whether a regulation denies an owner economically viable use of his property. In

*Nollan,* the Court found that the [regulation] failed the first test and thus violated the takings clause. The Court did not reach the second test.

*Id.* at 1135–1136. The Eleventh Circuit concluded that an analysis of "economically viable use" necessarily leads to a discussion of "the extent to which the regulation has interfered with investment-backed expectations." *Id.* We too have recognized that a federal takings analysis involves balancing these three factors:

> The Supreme Court has suggested that where an owner is denied only some economically viable uses, a taking still may have occurred where government action has a sufficient economic impact and interferes with distinct investment-backed expectations. Traditionally, the type of governmental interference also is considered a factor relevant to the takings inquiry.

*Del Monte Dunes,* 95 F.3d at 1432.

■ At its barest, the federal takings test has not been given a "precise rule," but "the question necessarily requires a weighing of private and public interests." *Agins v. Tiburon,* 447 U.S. 255, 261, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). The district court did not proceed into such an evaluation here. We must now decide whether to remand for this purpose or to decide this issue ourselves on the facts of the record before us.

### V.

■ We may decide the takings issue on our own, provided that no additional fact-finding is necessary and certain requirements are met. As we noted in *Dodd IV,* "[c]ertainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, or where injustice might otherwise result." *Dodd IV,* 59 F.3d at 863 (quoting *Golden Gate Hotel Assoc. v. City and County of San Francisco,* 18 F.3d 1482 (9th Cir.1994)). We required the district court to decide "whether a factual predicate is necessary." The district court decided that no additional factual findings were necessary, and an examination of the record indicates that the court did not err in this respect because the material facts are not in dispute.

■ We have decided that this is an appropriate case for this court to consider and rule on the other takings factors which the district court did not address. We are influenced by several factors. First, there is the backdrop of the Dodds' lengthy history of pursuing this case-before the state administrative agencies, followed by appeals to the Oregon Court of Appeals and Oregon Supreme Court, the first proceeding before the district court, the first appeal to this Court, the second proceeding before the district court and this second appeal here. Second, we have applied issue preclusion against the Dodds in order "to strike a delicate balance between the interests of the defendant and of the courts in bringing litigation to a close and the interest of the plaintiff in the vindication of a just claim." *See Hanson v. Oregon Dep't of Revenue,* 294 Or. 23, 31, 653 P.2d 964 (1982).

Third, even if we were to remand this case, the district court would have to apply appropriate legal precepts, which are not controverted, to the material facts of this case, which are not in dispute. Under the unusual circumstances presented here, because "the proper resolution is beyond any doubt," we can perform that function here.

#### 1.

■ On remand, the district court would be required to analyze Oregon's interest in enacting and enforcing Goal 4, but there is no question what its conclusion would be: The government's interest was certainly legitimate. Goal 4 was enacted to promote commercial timber practices by limiting dwellings that could adversely affect forest uses and practices, such as fire protection and the application of chemicals. These interests are legitimate. They are directly in line with other governmental interests recognized as legitimate by the Supreme Court. *See, e.g., Nollan,* 483 U.S. at 834–35, 107 S.Ct. at 3147–48 (preservation of scenic values, designated landmarks and restrictions designed to protect public safety); *Agins,* 447 U.S. at 261, 100 S.Ct. at 2141–42 (protection against air, noise and water pollution, traffic conges-

tion, destruction of scenic beauty, disturbance of the ecology and environment, hazards to geology, fire and flood and other demonstrated consequences of "urban sprawl"). We conclude that the governmental interest in enacting Goal 4 and applying it to the Dodds was legitimate.

### 2.

The district court would have to analyze what, if any, "investment-backed expectations" the Dodds may have had when they purchased the 40–acre parcel. It is untenable for the Dodds to argue that they reasonably expected to build their retirement home in a Forest Use Zone without having to comply with Oregon state law at the time. At all times relevant to this case, Oregon state law permitted dwellings to be built in Forest Use Zones only if "necessary and accessory" to forest use. State Land Conservation & Dev. Comm'n Goal 4, Or. Admin. R. 660–15–000(4); *see Lamb,* 7 Or. LUBA at 143. Moreover, the Dodds could not reasonably have relied on any of the notices sent by the County Sanitarian and other officials relating to their parcel of land: Not one of these notices stated that the Dodds would ever be granted the necessary permits for their retirement home to be built. Even the Oregon Supreme Court, after noting that "[t]his court has never held that investment-backed expectations are part of any Article I, section 18 analysis" and refusing to so hold in this case, nevertheless suggested that "any investment-backed expectations [the Dodds] may have had were not reasonable." *Dodd III,* 317 Or. at 185, 855 P.2d 608. Against the background of the uncontroverted facts, this conclusion appears obligatory.

In reality, the facts of this case weigh heavily against the Dodds. Any "reasonable investment-backed expectations" the Dodds may have had were minimal at best and ephemeral at worst. The entire gravamen of their complaint was that they intended to build their retirement home on that parcel, not that they intended the parcel for any commercial investment. Given that they now have the authority to commence building, at best their only means of calculating damages is by the financial loss sustained by the delay in building this private home. Curiously, however, the Dodds have pursued their alleged expectation to build with something less than speed or vigor. They completed the purchase of the land in 1984, but waited until 1990 to file the necessary applications with the County in order to build their home. In addition, following the County's July 1, 1996 decision to permit the Dodds to build their retirement home, the Dodds to this day have failed to commence construction. Certainly then, time was not, and is not, of the essence for the Dodds. They claim to have suffered unjust delay at the hands of Hood River County, and yet the record makes clear that the Dodds' supposed expectation to build their retirement home has been delayed, in part, by their own choice. Therefore, the Dodds lack "reasonable investment-backed expectations" to build their residence.

### 3.

The Courts of Appeals were not created to be "the Grand Mufti of local zoning boards," *Hoehne v. County of San Benito,* 870 F.2d 529, 532 (9th Cir.1989), nor do they "sit as [ ] super zoning board[s] or [ ] zoning board[s] of appeals." *Raskiewicz v. Town of New Boston,* 754 F.2d 38, 44 (1st Cir.1985). The Dodds ask us to remand their case to the district court so they can argue, yet again, what is a losing cause. It is "beyond any doubt" that the specific issues they hope to relitigate can only be resolved against them. Perhaps more importantly, the Dodds' attempt to overburden even further the precious judicial resources of the federal courts would result in patent injustice. *See Dodd IV,* 59 F.3d at 863.

The district court correctly applied issue preclusion against the Dodds, but did not complete the inquiry that is required where there is not a total taking under federal law. We have completed the federal takings analysis by concluding that the governmental interest in enacting and enforcing Goal 4 was legitimate and that the Dodds did not have a reasonable investment-backed expectation to avoid state law in order to build their retirement home. Therefore, the judgment of the district court is **AFFIRMED.**